J. HOWARD SELF and DORIS K. SELF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Self v. Commissioner
Docket No. 6042-79.
United States Tax Court
T.C. Memo 1981-232; 1981 Tax Ct. Memo LEXIS 510; 41 T.C.M. (CCH) 1465; T.C.M. (RIA) 81232; May 11, 1981. *510 Petitioners received a mail-order charter from the Universal Life Church, Inc., Modesto, California; they filled in the name "Brockman Scientific Church" on the charter; and they kept records in which they designated certain of their check and cash payments as being for church expenses or church investments. Held: Petitioners did not make gifts to the Brockman Scientific Church or to the Universal Life Church, Inc., Modesto, California; charitable contributions deduction is disallowed. Sec. 170(a)(1), IRC 1954. J. Howard Self and Doris K. Self, pro se. David W. Johnson, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax and additions to tax under sections 6651(a) [1] (failure to file return) and 6653(a) (negligence) against petitioners as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
J. Howard Self and
Doris K. Self
1975
$ 7,966.61
J. Howard Self
1976
2,460.00
$ 160.42
$ 123.00
After concessions by both sides, the issue for decision *511 is whether petitioners made contributions during 1976 to the Brockman Scientific Church, Chapter 20093, which are deductible by petitioner J. Howard Self under section 170. [2] *512 FINDINGS OF FACT Some of the facts have been stipulated. The stipulations and stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners J. Howard Self (hereinafter sometimes referred to as "Howard") and Doris K. Self (hereinafter sometimes referred to as "Doris"), husband and wife, resided in Houston, Texas. After reading some literature concerning the Universal Life Church, Inc., of Modesto, California (hereinafter sometimes referred to as "the ULC"), Howard and Doris contacted the ULC. Upon payment of $ 20, they received from the ULC a document entitled "Charter", which stated "This is to certify that       (Name of Church) of       State or Province of       has been granted by Universal Life Church, Inc., Modesto." In the lower righthand corner of the document, next to "No.", was inserted "20,093". Petitioners typed *513 the name "Brockman Scientific Church" on this document. The document was dated March 31, 1975. All that was required of petitioners to obtain this document from the ULC was the payment of $ 20 to the ULC. During 1977 and 1979, Howard and Doris received additional documents from the ULC entitled "Charter", each retroactively dated March 31, 1975, reflecting name changes in 1977 from "Brockman Scientific Church, Chapter 20093" to "Brockman Scientific Church Trust, Chapter 20093" and in 1979 to "Universal Life Church, Inc., Congregation No. 20093". (The Brockman Scientific Church, Chapter 20093, the Brockman Scientific Church Trust, Chapter 20093, and the Universal Life Church, Inc., Congregation No. 20093, all are hereinafter sometimes referred to as "the Church". [3]) The Church has never been incorporated. Upon payment by each of an additional $ 1, Howard *514 and Doris received documents entitled "Credentials of Minister" from the ULC. These documents, too, were dated March 31, 1975. Upon payment of an additional $ 20, Howard received from the ULC a payment of an additional $ 20, Howard received from the ULC a document awarding him an honorary Doctor of Divinity degree "for meritorious recognition upon completion of a course of instruction in the principles of the Universal Life Church." This document, too, was dated March 31, 1975. The payments of the indicated amounts ($ 1 for each "Credentrials of Minister" document and $ 20 for the "honorary Doctor of Divinity degree") were all that was required of petitioners to receive the foregoing documents. During 1976, the address used for the Church was that of an apartment which was petitioners' personal residence at that time. The address used for the Church as of the date of the trial in the instant case was that of petitioners' personal residence as of the trial date. During 1976, Howard was employed as a mechanical engineer and Doris was employed by a manufacturing plant. Their wages totalled $ 26,589.49. Petitioners deposited their pay checks into their personal checking account. *515 From this account they wrote checks to pay what they determined to be "church expenses". Their general practice as to a pay check was to withdraw from this account cash equal to the amount by which half the pay check exceeded the foregoing "church expenses". This cash was placed in a safe in petitioners' home. Petitioners then wrote out a receipt for a contribution of half the pay check to the Church. The receipts for 1976 were signed by "Rev. Hank Aigner" or "Rev. Vena Aigner", friends of petitioners. Petitioners used the money thus designated as having been contributed to the Church for payment of the following items, aggregating $ 13,971.68, during 1976: (a) $ 225 per month rent for the apartment which constituted petitioners' residence and the Church's address--$ 2,700.00; (b) utilities for the apartment, including bills for telephone calls to Doris' mother--$ 320.12; (c) repairs to petitioners' two automobiles--$ 339.23; (d) entertainment expenses for taking some person or persons out to dinner--$ 51.05; (e) gasoline expenses charged to credit cards (about one-half the total gasoline expenses)--$ 456.42; (f) contributions--$ 75.00; (g) automobile insurance--$ 337.00; (h) *516 automobile license fees--$ 13.30; (i) new lock for the apartment--$ 25.48; (j) "emergency" food supplies, stored in the apartment--$ 1,189.55; and (k) investments in stock, coins, and stamps--$ 8,464.53. The stock so invested in was registered in petitioners' names; it was paid for by a check drawn on Howard's account. The coins and stamps so invested in were paid for part by cash and part by checks drawn on various accounts--Howard's account, an account of Howard and Doris, and an account of Life Line Investments (the name Howard used for his design engineer service business). The stock, coins, and stamps were in petitioners' possession at the time of the trial in the instant case. The above-described receipts to petitioners for contributions to the Church aggregated $ 13,264.14 for 1976. Other records maintained by petitioners showed contributions to the Church of an additional $ 2,086, the source of which is not revealed in the record in the instant case. Petitioners made the decisions as to expenditures of the Church's funds. None of the Church's funds were sent to the ULC in 1976. In or about January 1977, petitioners sent the ULC a check for $ 24 for the year 1976. Howard *517 and Doris each submitted for filing a Form 1040 dated March 21, 1977, for 1976. Apart from two W-2 forms attached to Howard's Form 1040 and one W-2 form attached to Doris' Form 1040, claims for refund of the amount shown as withheld Federal income tax, and claims of one personal exemption, the lines on each Form 1040 were filled in with zeros, asterisks, or "Under * 740.00". Neither Howard nor Doris claimed a deduction for charitable contributions on his or her Form 1040 for 1976. On petition, petitioners assert "[t]axpayers herewith revoke their signatures on * * * document 1040 dated March 21, 1977" and "[a]ll alleged tax amounts mentioned herein were offset by proper deductions, and all returns were timely filed." By stipulation filed at trial, "[t]he parties agree that J. Howard Self and Doris K. Self are liable for additions to tax pursuant to sections 6651(a) and 6653(a) for taxable year 1976." Petitioners' designations on their books, receipts, payments of expenses, placement of cash in a safe, and investments in stock, coins, and stamps do not constitute payments of charitable contributions in 1976. OPINION Petitioners assert that they made charitable contributions of one-half *518 of their combined adjusted gross incomes to the Church and that the Church is an eligible donee, both in its own right and as a part of the Universal Life Church. Respondent maintains that petitioners did not make contributions to the Church, that the Church did not patake of any exempt status enjoyed by the Universal Life Church, and that the Church was not a qualified donee in its own right (because it was not an organization, it was not organized and operated exclusively for one or more of the statutory purposes, and a part of its net earnings inured to the benefit of private individuals). We agree with respondent that petitioners did not make contributions to the Church. [4]
Section 170[5] *520 *521 authorizes an individual to deduct up to 50 percent of his or her charitable contribution base (generally, adjusted gross income) for charitable contributions--contributions or gifts to or for the use of organizations that satisfy certain statutory requirements--"payment of which is made during the taxable year." [Emphasis added.] This *519 is in sharp distinction to the rule as to estates and trusts, which may under certain circumstances deduct amounts permanently set aside for charitable purposes. See section 642(c)(2). Petitioners' designations on the books they maintained do not rise to the substance of payments. Petitioners' placement of cash in the safe in their home does not, by itself, constitute payment. Petitioners did pay for investments in stock, coins, and stamps. However the stock is registered in petitioners' names and petitioners retained physical possession of all these investments. Nothing in the record in the instant case shows that petitioners parted with either real or formal ownership of these investments. Petitioners have, indeed, made payments of various expenses (items (a) through (e) and (g) through (j) in the Findings of Fact, supra). Every one of these items appears on its face to be a personal expense of petitioners and the record fails to show any supervening Church element that would justify treating payments of these items as payments of the Church's expenses. E.g., Tate v. Commissioner, 59 T.C. 543, 550 (1973). Finally, as to the $ 75 contribution (item *522 (f) in the Findings of Fact, supra), we interpret respondent's counsel's statement at trial as an implicit concession that petitioners are, between them, entitled to deduct that item (see note 2, supra). Petitioners have the burden of proving their entitlement to the claimed charitable contributions deduction. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. We conclude that petitioners have failed to bear their burden of proving that in 1976 they paid contributions or gifts within the meaning of section 170(a)(1) (other than the foregoing $ 75 item). Petitioners assert that the Constitution forbids us to rule whether the Church is a church. Petitioners also argue that the Church is a church. In view of our conclusions as to whether petitioners paid contributions or gifts in 1976, we find it unnecessary to confront this question. See Golden Rule Church Association v. Commissioner, 41 T.C. 719, 730 (1964), and cases cited therein. See also Chapman v. Commissioner, 48 T.C. 358 (1967). On brief, petitioners assert that the instant case is "an indirect attack" on the ULC, which should, therefore, have been joined as a necessary party. *523 The record in the instant case does not include any showing--or even any allegation--that the ULC has filed a petition with this Court. We do not appear to have any jurisdiction over the ULC that would authorize us to require it (see Guarino v. Commissioner, 67 T.C. 329 (1976))--or even permit it (see Estate of Siegel v. Commissioner, 67 T.C. 1033, 1038 (1977))--to join as a party in the instant case. Petitioners point out that the Code specifically provides, in sections 107 [6] and 119, [7] *525 *526 for the exclusion from income of payments of clearly personal expenses. They suggest that that is all that happened in the instant case. However, section 107 specifically requires, for its application, that the home or rental allowance be furnished or paid as part of the minister's compensation. No showing of a compensation arrangement appears in the record in the instant case. Similarly, section 119 specifically requires, for its application, that the meals or lodging be furnished by the employee's employer for the convenience of the employer. No showing appears in the record of the instant case that there was the type of employment envisioned by section 119 or that the meals or lodging were *524 furnished for the convenience of the Church. On the one issue presented to us, we hold for respondent. Because of concessions by both sides on other issues (see note 2, supra), Decision will be entered under Rule 155. Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.↩
2. The parties have settled all issues as to 1975 and all the remaining issues as to 1976. Although notices of deficiency were sent to both petitioners as to 1976, only petitioner J. Howard Self petitioned as to 1976. Since Texas is a community property state, one-half of both petitioners' 1976 income is considered to be earned by petitioner J. Howard Self and, in general, he is entitled to a deduction for one-half of all the expenses properly chargeable against community income. Johnson v. Commissioner, 72 T.C. 340, 347 (1979); Stewart v. Commissioner, 35 B.T.A. 406, 411 (1937), affd. 95 F.2d 821 (CA5 1938). Moreover, it is evident from the record that both petitioners consented to the expenditure of the alleged charitable contributions from community income. Compare Clemens v. Commissioner, 8 T.C. 121, 126 (1947). Consequently, although the issue in the instant case is presented only as to petitioner J. Howard Self, our findings of fact are determined on a community basis. Respondent's counsel assured the Court that he will recommended abatement of the assessment made against petitioner Doris K. Self as to 1976 to the extent necessary to make it consistent with the conclusions of the Court as to the deficiency and additions, if any, that the Court redetermines against petitioner J. Howard Self as to 1976.
3. The term "the Church" is used herein merely for convenient identification. No finding is made that the Church is an entity, or that the Church is one of the kinds of organizations referred to in the opening flush language of paragraph (2) of section 170(c), or that it is "a church" within the meaning of section 170(b)(1)(A)↩.
4. Because of our determination, we do not consider whether the Church is an eligible donee, either in its own right or as a part of the ULC. See also note 3, supra.↩
5. Section 170 provides, in pertinent part, as follows: SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General rule.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. (b) Percentage Limitations.-- (1) Individuals.--In the case of an individual, the deduction provided in subsection (a) shall be limited as provided in the succeeding subparagraphs. (A) General rule.--Any charitable contribution to-- (i) a church or a convention or association of churches, shall be allowed to the extent that the aggregate of such contributions does not exceed 50 percent of the taxpayer's contribution base for the taxable year. (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- (2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. A contribution or gift by a corporation to a trust, chest, fund, or foundation shall be deductible by reason of this paragraph only if it is to be used within the United States or any of its possessions exclusively for purposes specified in subparagraph (B). [The subsequent amendments of subsections (a)(1), (c)(2)(B), and (c)(2)(D) (by sections 1906(b)(13) [sic↩](A), 1313(b)(1), and 1307(d)(1)(B)(i), respectively, of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1834, 1730, 1727, respectively) do not affect the instant case.]
6. SEC. 107. RENTAL VALUE OF PARSONAGES. In the case of a minister of the gospel, gross income does not include-- (1) the rental value of a home furnished to him as part of his compensation; or (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home. ↩
7. SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER. (a) General Rule.--There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenence of the employer, but only if-- (1) in the case of meals, the meals are furnished on the business premises of the employer, or (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment. (b) Special Rules.--For purposes of subsection (a)-- (1) Provisions of employment contract or state statute not to be determinative.--In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation. (2) Certain factors not taken into account with respect to meals.--In determining whether meals are furnished for the convenience of the employer, the fact that a charge is made for such meals, and the fact that the employee may accept or decline such meals, shall not be taken into account. (3) Certain fixed charges for meals.-- (A) In geneal.--If-- (i) an employee is required to pay on a periodic basis a fixed charge for his meals, and (ii) such meals are furnished by the employer for the convenience of the employer, there shall be excluded from the employee's gross income an amount equal to such fixed charge. (B) Application of subparagraph (A).--Subparagraph (A) shall apply-- (i) whether the employee pays the fixed charge out of his stated compensation or out of his own funds, and (ii) only if the employee is required to make the payment whether he accepts or declines the meals. [The subsequent amendments of this provision (by sec. 205 of the Foreign Earned Income Act of 1978, Pub. L. 95-615, 92 Stat. 3107, and sec. 108(a)(1)(G) of the Technical Corrections Act of 1979, Pub. L. 96-222, 94 Stat. 225) do not affect the instant case.]