SOUTHERN PACIFIC TRANSPORTATION COMPANY, PETITIONER
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7501–72.    Filed March 12, 1985.

*Arnold I. Weber, Alan S. Beinhorn,* and *William E. Saul,* for the petitioner.

*Peter D. Bakutes, James Booher, Vernon R. Balmes, Bernard Plamer, Lawrence G. Becker,* and *Randall G. Dick,* for the respondent.

OPINION

## Background

JACOBS, *Judge:*\* Petitioner herein is Southern Pacific Transportation Co. ("Transportation"), in its capacity as transferee of the assets of Southern Pacific Co. ("former Southern Pacific"), the common parent of an affiliated group of corporations.[1] This case is before the Court on Transportation's

---

\*By order of the Chief Judge, this case was reassigned from Judge William M. Drennen to Judge Julian I. Jacobs for disposition.

[1] In the statutory notice of transferee liability, respondent proposed assessment against Southern Pacific Transportation Co., as a transferee, of the liabilities of the former Southern Pacific Co. affiliated group which, during the years at issue, consisted of the following corporations:

Southern Pacific Co. (former Southern Pacific)
Holton Inter-Urban Railway Co.
Inter-California Railway Co. (liquidated effective 7/25/66)
Los Angeles Union Terminal, Inc.
Nacozari Railroad Co. (liquidated effective 5/5/66)
Northwestern Pacific Railroad Co.
Pacific Electric Railway Co. (merged into former Southern Pacific, 8/13/65)
Pacific Petroleum Pipe Lines, Inc.
Petaluma & Santa Rosa Railroad Co.
San Diego & Arizona Eastern Railway Co.
Southern Pacific Equipment Co.
Southern Pacific Land Co.
Southern Pacific Pipe Lines, Inc.
Southern Pacific Railroad Co. of Mexico (liquidated effective 8/23/55)
Tijuana & Tecate Railway Co. (stock sold 1970)
Union Terminal Warehouse
Visalia Electric Railroad Co.
Louis Heller, Inc.
Pacific Motor Transport Co.
Pacific Motor Trucking Co.
Southern Pacific Terminal Co. (liquidated effective 8/31/62)
Rio Bravo Oil Co. (subsequently named Bravo Oil Co.)
Southern Pacific Transport Co. (subsequently named Southern Pacific Transport Co. of Texas and Louisiana)
Texas Town Lot Co.
St. Louis Southwestern Railway Co.
St. Louis Southwestern Railway Co. of Texas
Southwestern Transportation Co.
Main Street Warehouse Co.
The Southwestern Town Lot Corp.
Dallas Terminal Railway & Union Depot Co.
Dallas Smith Service Corp. (liquidated effective 4/7/69)
Engineering Enterprises, Inc. (stock sold 1967)
BLC Corp.
Bankers Leasing Corp.
Chattel Leases, Inc.
The Commonwealth Plan, Inc.
The Commonwealth System, Inc.
Financing Leasing Corp.
Lease Capital, Inc.

motion to dismiss for lack of jurisdiction and on its motion, in the alternative, to substitute itself as petitioner in its capacity as the surviving corporation in merger with and as successor in interest to Southern Pacific Co., in its own behalf and as agent for those corporations which were members of the Southern Pacific Co. affiliated group for the taxable years 1962 through 1965.[2]

Prior to its dissolution on November 26, 1969, former Southern Pacific was a corporation organized under the laws of Delaware on March 21, 1947. Transportation was incorporated under Delaware law on February 20, 1969. Sometime before November 26, 1969, S.P. Inc., a newly formed Delaware corporation, acquired the outstanding stock of Transportation, pursuant to the terms of a merger agreement, dated February 20, 1969, among former Southern Pacific, Transportation, and S.P., Inc. In accordance with the merger agreement, former Southern Pacific transferred all of its assets to Transportation and ceased its separate corporate existence. As provided in the merger agreement and pursuant to an amendment to its certificate of incorporation adopted by its board of directors on February 20, 1969, S.P. Inc. changed its name to Southern Pacific Co. (hereinafter new Southern Pacific). The name change took effect on November 26, 1969, the effective date of the merger. Under the merger agreement, the stock of the shareholders of former Southern Pacific was automatically converted into stock of new Southern Pacific. Thus, without any formal surrender of stock certificates, the shareholders of former Southern Pacific, after the merger, became the owners of new Southern Pacific, which had no other shareholders. New Southern Pacific owned all the stock of Transportation which, in turn, owned all the assets of former Southern Pacific.

---

Lease Funds, Inc.
The Pacific Plan, Inc.
The Worcester Plan, Inc.

All of these corporations or their successors, have joined in the petition, except Engineering Enterprises, Inc., and Tijuana & Tecate Railway Co. (the stock of Engineering Enterprises, Inc., and Tijuana & Tecata Railway Co. was sold after the close of the years at issue). These corporations have joined in the petition to contest the deficiencies set out in the statutory notice of transferee liability in the event that the notice is construed as a notice of deficiency as to each corporation.

[2]The extent of Transportation's liability as a transferee is not at issue. Further, a similar motion was made in a companion case. See *Southern Pacific Co. v. Commissioner,* docket No. 7502–72, 84 T.C. 375 (1985), filed today.

The merger agreement specified that Transportation was the surviving corporation in the merger. Article SECOND of the agreement provided that "all rights of all creditors of, and all liens, mortgages or charges upon the property of [former Southern Pacific] shall be preserved unimpaired." Article THIRD provided as follows:

On and after the effective date of this agreement [Transportation] hereby expressly assumes liability for obligations of any kind whatsoever, without exception, owed, incurred or assumed by [former Southern Pacific], including, but not limited to, contracts, deeds of trust, indentures, debts, mortgages, liabilities and duties, and all such shall, on and after such effective date, attach to [Transportation] and be enforceable against it and its properties to the same extent as if incurred or contracted by it. On and after such effective date, [Transportation] expressly assumes the due and punctual payment of all outstanding bonds, debentures, equipment trust obligations and conditional sales obligations issued or assumed by [former Southern Pacific], together with interest thereon, according to their tenor, and the due and punctual performance and observance of all the covenants and conditions of any mortgage indenture or other legal instrument under which any of such obligations were issued or assumed. This agreement and merger shall preserve and not impair the lien and security of any such mortgage indenture or other legal instrument and any of the rights and powers of the trustee, bondholders or any other parties thereunder. On or immediately after the effective date of this agreement, [Transportation] shall also execute, and cause to be appropriately recorded, such indentures as the trustee, or any other party to any such mortgage indenture or other legal instrument, may request, and in form satisfactory to such trustee or other party, whereby the obligations of [former Southern Pacific] under any such mortgage indenture or other legal instrument shall be assumed by [Transportation] and [Transportation] shall succeed and be substituted for [former Southern Pacific] thereunder.

For all of the years at issue (calendar year 1962 through 1965), former Southern Pacific filed consolidated returns for itself and as the common parent of an affiliated group of corporations.

In September of 1969, former Southern Pacific and respondent executed Forms 872 extending the period of limitations for assessment of Federal income tax against the former Southern Pacific affiliated group for the years 1962 through 1967 to March 31, 1971. At that time, the limitations period for these years had not expired.

By letter dated December 2, 1969, the San Francisco District Director was advised that former Southern Pacific had ceased to exist and that Transportation was the designated agent of

the affiliated group for all relevant taxable years through the taxable year ended December 31, 1968.

In November of 1970, renewal Forms 872 were executed for the years 1962 through 1967. Each waiver identified the taxpayer as "Southern Pacific Transportation Company, surviving corporation in merger with, and in its own behalf, and as agent for those corporations which were members of the Southern Pacific Company affiliated group during the taxable year below described." The waivers purported to extend the limitations period to September 15, 1971.

In March of 1971, another set of renewal Forms 872 was executed, at the instance of respondent, that purported to extend the limitations period for the years 1962 through 1965 to June 30, 1972, and for the years 1966 and 1967 to September 15, 1972. These waivers described the taxpayer as "Southern Pacific Company (formerly S.P., Inc.)* successor in interest to Southern Pacific Company and common parent of the Southern Pacific affiliated group for the year indicated below." The asterisk referred to a footnote, that stated as follows: "See taxpayer's letter of transmittal as to this language." The transmittal letter objected to the designation of new Southern Pacific as the proper entity to execute waivers.[3]

---

[3]The transmittal letter reads as follows:

March 29, 1971

Mr. Raymond F. Harless
District Director
Internal Revenue Service
P.O. Box 36040
San Francisco, CA 94102

Dear Sir:                                        Attention: *Mr. Benjamin Lemos*

As orally requested we send you herewith six sets of Form 872, "Consent Fixing Period of Limitation Upon Assessment of Income Tax," extending the period of limitations for the taxable years 1962–1965, inclusive, to June 30, 1972, and for the taxable years 1966–1967, inclusive, to September 15, 1972. For reasons discussed by Southern Pacific Law Department personnel with personnel in the San Francisco Office of Regional Counsel, we think inappropriate the manner in which the "taxpayer" is described in these waivers, and have executed them in their present form only because you have asked that we do so notwithstanding our reservations.

We understand that you wish the present waivers to be executed before March 31, 1971, in order that they may become effective before the waivers executed in September 1969 in the name of "Southern Pacific Company and Members of its Affiliated Group" for the years 1962–1966 expire. Accordingly the present waivers upon execution thereof are to be regarded as superseding the waivers executed in November 1970 for the same years in the name of "Southern Pacific Transportation Company, surviving corporation in merger with, and successor in interest to Southern Pacific Company, in its own behalf, and as agent for those corporations which were members of the Southern Pacific Company Affiliated Group."

(S) H. A. Nelson

On June 28, 1972, respondent mailed a statutory notice to new Southern Pacific, determining deficiencies against the affiliated group for the years 1962 through 1965. On the same date, respondent sent Transportation a notice of transferee liability with respect to the consolidated Federal income tax liabilities of the former Southern Pacific affiliated group for the years 1962 through 1965. The notice provides as follows:

> The determination of the income tax liability of Southern Pacific Company and that of its affiliated companies for the taxable years ended December 31, 1962, December 31, 1963, December 31, 1964, and December 31, 1965, discloses deficiencies in the amounts of $14,087,392.33, $10,718,321.15, $11,446,017.27 and $8,827,875.13, respectively, as shown in the attached statement. The amount of the deficiencies, plus interest as provided by law, constitutes your liability as a transferee of assets of said Southern Pacific Company, and will be assessed against you.

## Discussion

Petitioner's position in moving for dismissal is that respondent's statutory notice, which determined deficiencies for the years 1962 through 1965 in the consolidated tax liabilities of former Southern Pacific and affiliates, against Transportation as transferee, was invalid and therefore respondent is without authority to assess any tax against it. Transportation maintains that it is primarily liable for any pre-merger tax deficiencies, and can only be held responsible for any deficiencies in that capacity, and that consequently the statutory notice of transferee liability is invalid.

Section 6901(b)[4] of the Code defines the term "transferee" to include a "distributee." The regulations elaborate somewhat on the definition by providing that a "transferee" includes "the successor of a corporation, a party to a reorganization as defined in section 368, and all other classes of distributees." Sec. 301.6901-1(b), Proced. & Admin. Regs.

There is no dispute herein that Transportation is the successor in interest to former Southern Pacific. However, Transportation maintains, on the authority of *Oswego Falls Corp. v. Commissioner*, 26 B.T.A. 60 (1932), affd. 71 F.2d 673 (2d Cir. 1934), and *Saenger v. Commissioner*, 38 B.T.A. 1295 (1938),

---

[4]All statutory references are to the Internal Revenue Code of 1954 as in effect during the years at issue.

that it cannot be held liable as a transferee because, under Delaware law and under the merger agreement, it is primarily liable for any obligations of former Southern Pacific.

In *Oswego Falls*, we held that the corporation resulting from the consolidation of three other corporations was primarily liable for any tax deficiencies of the consolidating corporations under New York law, and therefore could not, under State law, be subject to transferee liability. 26 B.T.A. at 69–76. We followed *Oswego Falls* in *Saenger* in holding that the corporation resulting from a consolidation of three corporations under Louisiana law was directly and primarily liable for the predecessor corporations' tax deficiencies as a taxpayer rather than as a transferee. 38 B.T.A. at 1302.[5]

Respondent, on the other hand, argues that *Turnbull, Inc. v. Commissioner*, 42 T.C. 582 (1964), affd. 373 F.2d 91 (5th Cir. 1967), is dispositive of whether or not Transportation is a transferee. In *Turnbull, Inc.*, both this Court and the Fifth Circuit held that the successor in a merger was liable as a transferee for the merged corporation's tax deficiencies where the successor obligated itself under the merger agreement and under a transferee agreement (Form 2045) to pay the liabilities of its predecessor, notwithstanding the fact that the pertinent State merger laws imposed primary liability on the successor. Accord *Texsun Supply Corp. v. Commissioner*, 17 T.C. 433 (1951) (holding that the successor in a merger under Louisiana law as a transferee where the successor assumed the merged corporation's liabilities under the merger agreement and had executed a Form 2045).

In the present case, the relevant Delaware statute, like the New York and Louisiana statutes construed in *Oswego Falls* and *Saenger*, provides that the successor corporation in a merger succeeds to and is liable for the debts and liabilities of the acquired corporation to the same extent as though incurred by the successor corporation. Del. Code Ann. tit. 8, sec. 259 (1953). There is, however, a distinguishing factor in the case before us that was absent in *Oswego Falls* and *Saenger*. Transportation, like the successor corporations in *Turnbull, Inc.* and *Texsun Supply*, contractually obligated itself under

---

[5]In both *Oswego Falls Corp. v. Commissioner*, 26 B.T.A. 60 (1932), affd. 71 F.2d 673 (2d Cir. 1934), and *Saenger v. Commissioner*, 38 B.T.A. 1295 (1938), the amount of liability was not in dispute, only the nature of the liability.

the merger agreement to pay the liabilities of former Southern Pacific. We hold that this factor renders Transportation liable as a transferee at law,[6] regardless of whether or not Transportation, by virtue of the Delaware statute, is also primarily liable for any deficiencies due from former Southern Pacific. We conclude, therefore, that respondent's notice of transferee liability was proper, and that this Court has jurisdiction over Transportation as a transferee.

We note that Transportation's argument proceeds on the premise that one may not be both primarily liable and liable as a transferee. However, in *United States v. Floersch*, 276 F.2d 714 (10th Cir. 1960), the Tenth Circuit held that a widow, who received her husband's assets upon his death, could be held liable as a transferee for an income tax deficiency of the husband, even though she was also primarily liable for the deficiency by virtue of having filed a joint return with her husband for the year at issue.

Transportation attempts to read the *Floersch* case as supporting its contention that one cannot have both primary and transferee liability "as to the same assets." It would thus appear that Transportation's argument follows from a mistaken conception of the nature of primary liability. The basis for imposition of primary liability is in no way dependent upon the identity of the obligor's assets. Primary liability is a personal liability that may be satisfied from any or all of the obligor's assets.

Transferee liability, on the other hand, is not a personal liability and only subjects the property or fund, which was received by the transferee from the transferor, to the debts of the transferor. Thus, in certain cases, such as that before us, it is possible for a person to be primarily liable for a transferor's debts and also to be liable as a transferee.

Transportation's second contention, that the notice of transferee liability was barred by the statute of limitations, is not a plea to the jurisdiction of this Court but is a defense in bar. *Badger Materials, Inc. v. Commissioner*, 40 T.C. 1061, 1063

---

[6] Although Transportation did not execute a Form 2045, as was the case in both *Turnbull, Inc.* and *Texsun Supply*, we find that Transportation's assumption of former Southern Pacific's liabilities in the merger agreement sufficient by itself to support our conclusion that Transportation is a transferee at law. We believe that the execution of the transferee agreements in *Turnbull, Inc.* and *Texsun Supply* simply provided additional evidence of the successor corporation's transferee status.

(1963). It is not therefore a ground upon which dismissal for lack of jurisdiction may be based.

Transportation has filed a motion in the alternative to substitute itself as petitioner herein in its capacity as the successor in interest to former Southern Pacific Co. and as the agent for the former Southern Pacific Co. affiliated group. However, because we have determined that the deficiencies asserted against the affiliated group for taxable years 1962 through 1965 are properly before this Court in docket No. 7502–72, 84 T.C. 375 (1985), we see no reason for granting Transportation's motion herein.

Accordingly,

> *Transportation's motion to dismiss for lack of jurisdiction and its motion in the alternative to substitute itself as petitioner in its capacity as the surviving corporation in merger with and as successor in interest to Southern Pacific Company, in its own behalf and as agent for those corporations which were members of the Southern Pacific Company affiliated group for the taxable years 1962 through 1965, will be denied.*