SOUTHERN PACIFIC COMPANY (FORMERLY S. P. INC.),
PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 7502–72.    Filed March 12, 1985.

*Arnold I. Weber, Alan S. Beinhorn,* and *William E. Saul,* for the petitioner.

*Peter D. Bakutes, James Booher, Vernon R. Balmes, Bernard Plamer, Lawrence G. Becker,* and *Randall G. Dick,* for the respondent.

OPINION

## *Background*

JACOBS, *Judge:*\* This case is before the Court on petitioner's motion to dismiss for lack of jurisdiction. "Petitioners," as the word is used in this opinion, refers to Southern Pacific Co. (formerly S.P. Inc.) and a group of affiliated corporations.[1]

---

\*By order of the Chief Judge, this case was reassigned from Judge William M. Drennen to Judge Julian I. Jacobs for disposition.

[1]The members of the afiliated group for the years in issue, 1962 through 1965, that have joined in this petition include:

Holton Inter-Urban Railway Co.
Los Angeles Union Terminal Co., Inc.
Northwestern Pacific Railroad Co.
Pacific Petroleum Pipe Lines, Inc.
Petaluma & Santa Rosa Railroad Co.
San Diego & Arizona Eastern Railway Co.
Southern Pacific Equipment Co.
Southern Pacific Land Co.
Union Terminal Warehouse
Visalia Electric Railroad Co.
Dallas Terminal Railway & Union Depot Co.
Main Street Warehouse Co.
The Southwestern Town Lot Corp.
St. Louis Southwestern Railway Co.
St. Louis Southwestern Railway Co. of Texas
Louis Heller, Inc.
Pacific Motor Transport Co.
Pacific Motor Trucking Co.
Southern Pacific Transport Co. of Texas and Louisiana (formerly Southern Pacific Transport Co.)
Southwestern Transportation Co.

Prior to its dissolution on November 26, 1969, Southern Pacific Co. (hereinafter former Southern Pacific), a corporation organized under the laws of Delaware on March 21, 1947, was the parent company of an affiliated group. Southern Pacific Transportation Co. (hereinafter Transportation) was incorporated under Delaware law on February 20, 1969. Sometime before November 26, 1969, S.P. Inc., a newly formed Delaware corporation, acquired the outstanding stock of Transportation, pursuant to the terms of a merger agreement dated February 20, 1969, among former Southern Pacific, Transportation, and S.P. Inc. In accordance with the merger agreement, former Southern Pacific transferred all of its assets to Transportation and ceased its separate corporate existence. As provided in the merger agreement and pursuant to an amendment to its certificate of incorporation adopted by its board of directors on February 20, 1969, S.P. Inc. changed its name to Southern Pacific Co. (hereinafter new Southern Pacific). The name change took effect on November 26, 1969, the effective date of the merger. Under the merger agreement, the stock of the shareholders of former Southern Pacific was automatically converted into stock of new Southern Pacific. Thus, without any formal surrender of stock certificates, the

---

Southern Pacific Pipe Lines, Inc.
Bankers Leasing Corp.
BLC Corp.
Chattel Leases, Inc.
The Commonwealth Plan, Inc.
The Commonwealth System, Inc.
Financial Leasing Corp.
Lease Capital, Inc.
Lease Funds, Inc.
The Pacific Plan, Inc.
The Worcester Plan, Inc.
Southern Pacific Terminal Co. (liquidated 8/31/62)
Pacific Electric Railway Co. (merged into former Southern Pacific Co. 8/13/65)
Southern Pacific Railroad Co. of Mexico (liquidated 8/23/55)
Nacozari Rail Road Co. (liquidated 5/5/66)
Inter-California Railway Co. (liquidated 7/25/66)
Dallas Smith Service Corp. (liquidated 4/7/69)
Bravo Oil Co. (formerly Rio Bravo Oil Co.)
Texas Town Lot Co.

In addition to these corporations, the consolidated returns for the years 1962 through 1965 included Tijuana & Tecate Railway Co. (the entire outstanding stock of which was sold in 1970) and Engineering Enterprises, Inc. (the entire stock of which was sold in 1967).

Southern Pacific Transportation Co: has joined in the petition as the successor in interest to former Southern Pacific Co. Southern Pacific Co. (formerly S.P. Inc.) has brought the petition as the entity to which the statutory notice was addressed.

shareholders of former Southern Pacific, after the merger, became the owners of new Southern Pacific, which had no other shareholders. New Southern Pacific owned all the stock of Transportation which, in turn, owned all the assets of former Southern Pacific.

For all of the years at issue herein (calendar years 1962 through 1965), former Southern Pacific filed consolidated returns for itself and as the common parent of a group of affiliated companies.

In September of 1969, former Southern Pacific and respondent executed Forms 872 extending the period of limitations for assessment of Federal income tax against the former Southern Pacific consolidated group for the years 1962 through 1967 to March 31, 1971. The limitations period for these years was at the time still open.

By letter, dated December 2, 1969, the San Francisco District Director was advised that former Southern Pacific had ceased to exist and that Transportation was designated as the agent of the consolidated group for all relevant taxable years through the taxable year ended December 31, 1968.

In November 1970, renewal Forms 872 were executed for the years 1962 through 1967. Each waiver identified the taxpayer as "Southern Pacific Transportation Company, surviving corporation in merger with, and in its own behalf, and as agent for those corporations which were members of the Southern Pacific Company affiliated group during the taxable year below described." The waivers purported to extend the limitations period to September 15, 1971.

In March 1971, another set of Forms 872 was executed, at the instance of respondent, that purported to extend the statute of limitations for the years 1962 through 1965 to June 30, 1972, and for the years 1966 and 1967 to September 15, 1972. These waivers described the taxpayer as "Southern Pacific Company (formerly S.P., Inc.)* successor in interest to Southern Pacific Company and common parent of the Southern Pacific affiliated group for the year indicated below." The asterisk, which was inserted by petitioners, referred to a footnote, also inserted by petitioners, that stated as follows: "See taxpayer's letter of transmittal as to this language." The transmittal letter objected to the designation of new Southern

Pacific as the proper entity to execute the waivers.[2]

The notice of deficiency for the years 1962 through 1965 was sent to "Southern Pacific Company (formerly S.P., Inc.), successor in interest to Southern Pacific Company, and common parent of the Southern Pacific Affiliated Group" on June 28, 1972,[3] and forms the basis for the proceeding herein.

## Discussion

Petitioners argue that the petition herein must be dismissed on the ground that respondent failed to direct the notice determining deficiencies in their consolidated income tax liabilities for the years 1962 through 1965 to the proper party. Specifically, petitioners maintain that the determination of deficiencies for the years 1962 through 1965 against new Southern Pacific, as successor in interest to former Southern Pacific and as common parent of the affiliated group, was erroneous because new Southern Pacific was not, under the consolidated return regulations, the agent authorized to act for the affiliated group with respect to matters concerning the pre-merger taxable years of the group. Consequently, petition-

---

[2]The transmittal letter reads as follows:

March 29, 1971

Mr. Raymond F. Harless
District Director
Internal Revenue Service
P.O. Box 36040
San Francisco, CA 94102

Dear Sir:                    Attention: *Mr. Benjamin Lemos*

As orally requested we send you herewith six sets of Form 872, "Consent Fixing Period of Limitation Upon Assessment of Income Tax," extending the period of limitation for the taxable years 1962–1965, inclusive, to June 30, 1972, and for the taxable years 1966–1967, inclusive, to September 15, 1972. For reasons discussed by Southern Pacific Law Department personnel with personnel in the San Francisco Office of Regional Counsel, we think inappropriate the manner in which the "taxpayer" is described in these waivers, and have executed them in their present form only because you have asked that we do so notwithstanding our reservations.

We understand that you wish the present waivers to be executed before March 31, 1971, in order that they may become effective before the waivers executed in September 1969 in the name of "Southern Pacific Company and Members of its Affiliated Group" for the years 1962–1966 expire. Accordingly the present waivers upon execution thereof are to be regarded as superseding the waivers executed in November 1970 for the same years in the name of "Southern Pacific Transportation Company, surviving corporation in merger with, and successor in interest to Southern Pacific Company, in its own behalf, and as agent for those corporations which were members of the Southern Pacific Company Affiliated Group."

(S) H. A. Nelson

[3]In addition to determining deficiencies in the consolidated income tax liabilities of the affiliated group, the statutory notice disallowed refund claims, filed on Sept. 13, 1971, for calendar years 1962 through 1965.

ers claim that new Southern Pacific is not the proper party against which any deficiency attributable to the years 1962 through 1965 may be determined, and that this Court has no jurisdiction over the members of the affiliated group for the years 1962 through 1965 because respondent failed to direct the statutory notice to the proper agent for the group.

The jurisdiction of this Court can be invoked only by the timely filing of a petition by a taxpayer to whom a notice of deficiency is addressed. Sec. 6213(a).[4] As we pointed out in *Intervest Enterprises, Inc. v. Commissioner*, 59 T.C. 91, 94 (1972), there are at least three prerequisites to this Court's exercise of jurisdiction: (1) A notice, (2) the determination of a deficiency in the notice, and (3) the transmittal of the notice to the taxpayer. In the case before us, the controversy is focused upon whether the third of these requirements has been met, and requires, for its resolution, consideration of the consolidated return regulations.

At the outset, we note that the consolidated return regulations, which have been promulgated under the express authority granted in section 1502 and therefore are legislative in character, underwent a comprehensive revision in 1965 and 1966. B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders 15–51 n. 118 (4th ed. 1979). The revised regulations, which were adopted in final form in 1966, T.D. 6894, 1966–2 C.B. 362, were made effective only with respect to taxable years beginning after December 31, 1965. Sec. 1.1502–0(a), Income Tax Regs. The provisions of the former version of the regulations, sometimes referred to as the "A" regulations, are applicable to taxable years beginning before January 1, 1966. Sec. 1.1502–0(b), Income Tax Regs. Thus, for the years with which we are concerned in this proceeding, calendar years 1962 through 1965, it is the pre-1966 version of the regulations that governs.

A central feature of both versions of the consolidated return regulations is the role of the common parent as the exclusive agent for the affiliated group with respect to all procedural matters. In delineating the scope of the common parent's agency, the regulations specifically provide that the common parent shall act as the agent for all the affiliates for such

---

[4] All statutory references are to the Internal Revenue Code of 1954 as in effect during the years at issue.

purposes as receiving deficiency notices, filing refund claims, and executing waivers of the statute of limitations.[5] Secs. 1.1502–77, 1.1502–16A, Income Tax Regs.

Section 1.1502–16A of the pre-1966 regulations states the general rule:

"the common parent shall be for all purposes * * * *in respect of the tax for the taxable year for which a consolidated return is made or is required,* the sole agent, duly authorized to act in its own name in all matters relating to such tax, for each corporation which during any part of such year was a member of the affiliated group."[6] [Emphasis added.]

By its terms, the regulation contemplates that the common parent's authority to act as agent for the affiliated group arises on a year-by-year basis. Thus, for any given year in which a consolidated return is filed, the entity that is the common parent for that particular year is thereafter the sole agent with respect to any procedural matters that may arise in connection with the group's tax liability for that year.

Obviously, if the existence of the common parent were to terminate after the filing of a consolidated return for a particular year, the agency relationship would terminate, and the group would, in the absence of any provision in the regulations, be left without an agent to act on its behalf in any subsequent dispute over its liability for that year. The regulations, however, address this possibility. Section 1.1502–16A(c), Income Tax Regs., prescribes the following procedures:

(c) *Effect of dissolution of common parent corporation.* If the common parent corporation contemplates dissolution, or is about to be dissolved, or if for any other reason its existence is about to terminate, it shall forthwith notify the Commissioner of such fact and designate, subject to the approval of the Commissioner, another member of the affiliated group to act as agent in its place to the same extent and subject to the same conditions and limitations as are applicable to the common parent. If the notice thus required is not given by the common parent, the remaining members of the

---

[5]Petitioners' brief cursorily refers to *Community Water Service Co. v. Commissioner,* 32 B.T.A. 164 (1935), but the issue involved therein is not now before us.

[6]The general rule is reiterated in the post-1965 regulations as follows:

"The common parent, for all purposes (other than the making of the consent required by paragraph (a)(1) of sec. 1.1502–75, the making of an election under section 936(e), the making of an election to be treated as a DISC under sec. 1.992–2, and a change of the annual accounting period pursuant to paragraph (b)(3)(ii) of sec. 1.991–1) shall be the sole agent for each subsidiary in the group, duly authorized to act in its own name *in all matters relating to the tax liability for the consolidated return year.* [Sec. 1.1502–77(a), Income Tax Regs. Emphasis added.]"

group may, subject to the approval of the Commissioner, designate another member of the group to act as such agent, and notice of such designation shall be given to the Commissioner. Until a notice in writing designating a new agent has been received by the Commissioner, any notice of deficiency or other communication mailed to the common parent shall be considered as having been properly mailed to the agent of the group; or, if the Commissioner has reason to believe that the existence of the common parent has terminated, he may, if he deems it advisable, deal directly with any member of the group in respect of its liability.

Petitioners maintain that the December 2, 1969, letter to the District Director satisfied the requirement in the regulation that notice of designation be given to the Commissioner and that respondent's failure to notify petitioners of any objection to the designation of Transportation as the successor agent at that time amounted to approval of Transportation as the designated agent. Thus, petitioners conclude that Transportation is the properly designated agent for the affiliated group and that respondent's failure to address the notice of deficiency to Transportation deprives this Court of jurisdiction.

In response to petitioners' argument, respondent maintains that the reverse acquisition rule of section 1.1502–75(d)(3), Income Tax Regs., which was introduced as part of the 1966 revision and which applies to mergers occurring after October 1, 1965, requires a different result. Respondent contends that, because the 1969 acquisition of all of the former Southern Pacific's assets by the group consisting of new Southern Pacific and Transportation constituted a reverse acquisition under the regulations (sec. 1.1502–75(d)(3)(i)(b), Income Tax Regs.), of the post-1965 regulations not only provides that the affiliation of the former Southern Pacific group continued uninterrupted after the merger, but requires that new Southern Pacific must be treated as the common parent agent for the group for all years, both before and after the merger. Respondent also argues that, in any event, the designation of Transportation as the successor agent was invalid under section 1.1502–16A(c), Income Tax Regs., and that, therefore, respondent could properly ignore the designation.

We turn first to respondent's contention that the reverse acquisition rule applies in determining which entity is to be treated as the agent for the surviving affiliated group for taxable years before the acquisition.

Section 1.1502–75(d)(1), Income Tax Regs., provides the general rule that an affiliated group is deemed to remain in existence as long as the common parent remains the common parent and at least one subsidiary remains affiliated with it. The regulations recognize three exceptions to the general rule, each of which provides that the affiliated group is still deemed to remain in existence even though the common parent does not remain as the common parent. One of these exceptions is the reverse acquisition rule of section 1.1502–75(d)(3), Income Tax Regs.[7]

The reverse acquisition rule, by its terms, applies to mergers occurring after October 1, 1965. The rule provides that an affiliated group will not terminate where the stock or assets of the common parent are acquired by another corporation in exchange for the stock of that other corporation, provided that the shareholders of the acquired common parent, after the acquisition, own more than 50 percent of the value of the acquiring corporation's stock. Sec. 1.1502–75(d)(3)(i), Income Tax Regs. If the acquiring corporation, before the acquisition, is a common parent of an affiliated group, that group is deemed to terminate even though the acquiring corporation/common parent continues to exist for all purposes except those of the consolidated return provisions. The rule is clearly designed to eliminate the discretion that the shareholders of the two merging groups might otherwise have to determine which group survives, given the shareholders' ability to select which parent survives the merger.

Section 1.1502–75(d)(3)(i), Income Tax Regs., further provides that, after the acquisition, the acquiring corporation is to be treated as the common parent of the group that is deemed to survive the reverse acquisition. Respondent interprets this provision as requiring that the acquiring corporation must be treated as the common parent agent with respect to matters arising in connection with returns filed by the former common parent for taxable years that predate the acquisition, as well as with respect to the filing of consolidated returns in post-acquisition taxable years.

---

[7]The other two exceptions set forth in the regulations are where the common parent undergoes a reorganization described in sec. 368(a)(1)(F) and where there is a downstream transfer of the common parent's assets. Sec. 1.1502–75(d)(2)(i) and (ii), Income Tax Regs.

Petitioners, in disputing respondent's interpretation, maintain that the reverse acquisition rule is inapplicable to the question of which entity succeeds as agent for the group for taxable years 1962 through 1965, because (1) the rule only applies with respect to questions regarding the continuity of affiliated status and to questions regarding limitations on carryovers, and (2) the rule, having been adopted as part of the post-1965 regulations, is inapplicable to years governed by the pre-1966 regulations.

We do not agree with petitioners' contention that the reverse acquisition rule does not apply in determining which entity succeeds as agent for the affiliated group for the years ended prior to a reverse acquisition. We believe that the language of section 1.1502–75(d)(3)(i), Income Tax Regs.— "with the [acquiring] corporation becoming the common parent of the group"—clearly contemplates a metamorphosis of the acquiring common parent into the acquired common parent for the purposes of the consolidated return provisions. Petitioners have not advanced any policy reason for limiting the extent to which the new common parent steps into the shoes of the old common parent under the reverse acquisition rule, and we fail to see any justification for doing so. Indeed, we find that respondent's interpretation has much to recommend it in terms of administrative simplicity. Accordingly, we hold that the reverse acquisition rule applies in determining which entity succeeds the common parent as agent for the affiliated group with respect to years both *before* and *after* the reverse acquisition.

We next turn to petitioners' objection that the reverse acquisition rule does not apply to years governed by the pre-1966 regulations. It is true, as we have previously discussed, that section 1.1502–0(a), Income Tax Regs., provides that the post-1965 regulations apply to taxable years beginning after December 31, 1965. But the reverse acquisition rule, by its terms, applies to mergers occurring after October 1, 1965. We read the language of section 1.1502–75(d)(3), Income Tax Regs., as posing an exception to the general rule of non-retroactivity embodied in section 1.1502–0(a), Income Tax Regs.[8]

---

[8]Sec. 1.1502–75(d)(3), Income Tax Regs., is not the only provision of the post-1965 regulations that has an effective date that differs from the general effective date provided in sec. 1.1502–0(a), Income Tax Regs.

We believe that this interpretation is the only way to reconcile the apparent conflict between the specific language of section 1.1502–75(d)(3), Income Tax Regs., and the general effective date provided in section 1.1502–0(a), Income Tax Regs. Any other interpretation would render meaningless the specific provision in section 1.1502–75(d)(3), Income Tax Regs. If, for example, a reverse acquisition occurred on October 30, 1965, and the affiliated group reports on a calendar year basis, section 1.1502–75(d)(3), Income Tax Regs., by its terms, applies to the acquisition and, under section 1.1502–0(b), Income Tax Regs., the group's return for 1965 is governed by the pre-1966 regulations. In this example, the only logical approach would be to give effect to the specific effective date in section 1.1502–75(d)(3), Income Tax Regs., despite the apparently conflicting general non-retroactivity provision in section 1.1502–0(a), Income Tax Regs. Thus, the reverse acquisition rule becomes operative whenever a reverse acquisition occurs after October 1, 1965, without regard to section 1.1502–0, Income Tax Regs. There is no reason to believe that the drafters of the post-1965 regulations intended to limit the operative effects of the rule, once triggered, to years beginning after December 31, 1965, and petitioners have advanced no reason for our doing so.

There is no dispute that the November 26, 1969, merger constituted a reverse acquisition that occurred after October 1, 1965, within the meaning of section 1.1502–75(d)(3)(i), Income Tax Regs. As we concluded, *supra*, new Southern Pacific, as a result of the merger, became the successor common parent agent for the group for taxable years both before and after the merger. In view of our conclusion that, in the context of this case, the scope of the operation of the reverse acquisition rule is not limited to post-1965 years, we hold that, under the

The consolidated return change in ownership (CRCO) provisions of the post-1965 regulations apply to ownership changes made after Oct. 1, 1965. Sec. 1.1502–1(g)(1), Income Tax Regs. Similarly, the version of the built-in deduction provisions that was adopted as part of the revised regulations in 1966 was also made effective as to subsidiaries acquired on or after Oct. 1, 1965. Sec. 1.1502–15(a)(3), Income Tax Regs., T.D. 6894, 1966–2 C.B. 362, 392–393.

In the case of the built-in deduction provisions, it is interesting to note that the pre-1966 version of the rules continued to apply in post-1965 years to corporations acquired before Oct. 1, 1965, under the post-1965 built-in deduction provisions adopted in 1966, 1966–2 C.B. *supra*, at 392–393. The transitional rule adopted in the 1972 amendments to the built-in deduction provisions, T.D. 7246, 1973–1 C.B. 381, 386, continued the applicability of the pre-1966 provisions to certain assets acquisitions occurring on or before Apr. 17, 1968. Sec. 1.1502–15(a)(3), Income Tax Regs.

reverse acquisition rule, new Southern Pacific became the successor common parent agent for those pre-merger taxable years governed by the pre-1966 regulations as well as those governed by the post-1965 regulations. Respondent properly addressed the notice of deficiency for the affiliated group to new Southern Pacific as the successor common parent agent, and we have therefore jurisdiction over the affiliated group for the years 1962 through 1965.

In support of our holding that the reverse acquisition rule applies in determining which entity may act as agent for the group with respect to taxable years 1962 through 1965, we note that section 1.1502–75(d)(3), Income Tax Regs., adopts a substance-over-form approach,[9] an approach that we find applicable in a factual situation such as the one before us. The approach adopted in section 1.1502–75(d)(3), Income Tax Regs., is that where there is sufficient shareholder continuity from the acquired corporation to constitute control of the acquiring corporation, the substance of the change in formal corporate arrangements should control for purposes of the consolidated return provisions.

There was, both before and after the November 26, 1969, merger, complete identity of proprietary interest. As a result of the November 26, 1969, transaction, a holding company (new Southern Pacific) was established to hold stock of a company (Transportation) holding the operating assets of old Southern Pacific. Although, after the acquisition, there was a difference between the assets held by new Southern Pacific (stock in Transportation) and the assets held by old Southern Pacific (operating assets), this difference was simply the result of what, in practical effect, amounted to an ancillary "drop-down" of former Southern Pacific's operating assets to a wholly owned subsidiary (Transportation). When viewed in this manner, the merger and the acquisition can be isolated as separate steps. An examination of the merger by itself discloses that the transaction was a mere change in form—all the shareholders of old Southern Pacific became the only shareholders of new Southern Pacific, which held, in practical effect, the same assets as its predecessor. The simultaneous drop-down did not alter this fact. Given that the merger

---

[9]See B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, par. 15.24, at 15–77 (4th ed. 1979).

merely effected a formal change in corporate structure, we believe that in substance new Southern Pacific was a continuation of former Southern Pacific as the controlling (parent) corporation of the affiliated group.

It follows from our view of the scope of the operation of the reverse acquisition rule that section 1.1502–75(d)(3), Income Tax Regs., effectively overrides section 1.1502–16A(c), Income Tax Regs., with respect to a determination of the successor agent for pre-acquisition years following a reverse acquisition that occurred on or after October 1, 1965. Consequently, we need not discuss the parties' arguments under section 1.1502–16A(c), Income Tax Regs.

Petitioners also alleged as a ground for dismissal for lack of jurisdiction that the notice of deficiency was in any event barred by the statute of limitations. Petitioners have since abandoned this argument, recognizing that a claim as to the untimeliness of a deficiency notice is one that requires a determination on the merits and is not a ground upon which dismissal may be granted. *Badger Materials, Inc. v. Commissioner*, 40 T.C. 1061 (1963). In any event, petitioners base their claim as to the untimeliness of the statutory notice on their claim that new Southern Pacific is not the proper agent for pre-merger years and therefore had no authority to execute any Forms 872. Even if the untimeliness of a statutory notice was a proper ground for dismissal, for lack of jurisdiction, our holding that new Southern Pacific had the authority to act for the group would result in the denial of petitioners' motion on this ground.

Accordingly,

> *Petitioners' motion to dismiss for lack of jurisdiction will be denied.*