ESTATE OF MURRAY J. SIEGEL, DECEASED, FREDERICK ZISSU AND NORMAN LIPSHIE, EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1685-76.   Filed March 30, 1977.

*Gerald H. Litwin,* for Sherry Jene Siegel, applicant for intervention.

*Michael I. Saltzman,* for Arlene Siegel and Robert Siegel, applicants for intervention.

*William J. Salica,* for respondent.

OPINION

Scott, *Judge:* On October 6, 1976, Sherry Jene Siegel (by her guardian), Arlene Siegel, and Robert Siegel filed a motion "for an order permitting them either to join as parties under Rule 61 of the Rules of Practice and Procedure of this Court or intervene under Rule 63(d) in the above-captioned case, or such other relief as to the Court seems proper under the circumstances." This motion was filed as a "Motion to Intervene." A hearing on this motion was held at Newark, N.J., on January 31, 1977.

The record in this case shows that on December 5, 1975, respondent issued to the Estate of Murray J. Siegel, Mr. Frederick Zissu, executor, a statutory notice of deficiency proposing adjustments in the estate tax as reported on the return filed on behalf of the estate. One of the adjustments was the proposed inclusion in the gross estate of the value of a postdeath compensation agreement dated April 30, 1965, and amended October 24, 1967, and November 22, 1969, between a corporation, Vornado, Inc., and decedent. The value at the date of decedent's death assigned to this agreement in the notice of deficiency is $811,362.

On March 3, 1976, a petition in the name of Estate of Murray J. Siegel, deceased, Frederick Zissu and Norman Lipshie, executors, was filed in this Court contesting the various determinations made in the statutory notice of deficiency. The assignments of error in the petition filed on behalf of the estate included an assignment that the Commissioner erroneously included in the gross estate the value of the postdeath payments under decedent's employment agreement and that the Commissioner erroneously determined the value of decedent's employment contract to be $811,362. The allegations of fact in the petition with respect to the employment agreement are as follows:

5. * * *

(b)(1) The employment agreement here in issue provided that decedent was to serve as chief executive officer of his employer, and was to receive a stated salary over a ten-year term. It further provided that in the event of decedent's death during the term of the contract, salary payments were to continue to be made to decendent's [sic] children for the remainder of the stated term. Decedent died during the term of said contract and payments thereafter were made to decedent's children.

(ii) Had decedent become disabled during the term of the agreement, the rights and obligations of the decedent and his employer would have become altered by reason of such disability. However, decedent did not become disabled, and such alteration in the rights of the parties did not occur.

(iii) In the event that the decedent had become disabled during the term of his employment agreement, he would have been entitled to receive payments equal to the salary he was receiving prior to such disability. Pursuant to the agreement and the practice of the employer with respect to disabled executive officers, decedent would have been expected to render to the employer that amount of executive or consulting services of which he was capable. In the event of disability, decedent might have been deprived of his officership as president and chief executive officer of the employer; however, he would not have been relieved of his obligations to perform services for his employer.

(c) The Statutory Notice asserts that the employment agreement is includable in the gross estate by reason of Sections 2033, 2036, 2038 and 2039 of the Internal Revenue Code ("Code"). The asserted valuation of the employment agreement was computed pursuant to Regulations promulgated under Section 2031 of the Code. Thus, the Commissioner's theory on valuation is inconsistent with his theory for inclusion in the estate. As a result, the value asserted by the Commissioner is greater than the fair market value of the employment contract on the valuation date.

Respondent, on April 28, 1976, filed an answer denying the allegations of error, admitting the allegations of paragraph 5(b)(i) and the first sentence of paragraph 5(b)(iii), and denying the remaining allegations of paragraph 5(b) of the petition. His answer admitted the allegations contained in the first and second sentences of subparagraph (c) of paragraph 5 of the petition and denied the remaining allegations of subparagraph (c) of paragraph 5 of the petition. On April 28, 1976, respondent also filed with the Court a notice of jeopardy assessment in which he notified the Court that a jeopardy assessment of the deficiency involved in this case had been made "against the petitioner" on March 26, 1976.

In support of their motion for permissive joinder or intervention, the applicants for intervention made the following allegations:

1. The moving parties are the only children of Murray J. Siegel, deceased, and the only residuary beneficiaries of the Estate of Murray J. Siegel, deceased (the "Estate"), which is the petitioner in this proceeding.

2. One of the determinations made by the Commissioner in the Notice of Deficiency sent to the Estate which is the subject of this proceeding, is that the proceeds of an Employment Agreement between Murray J. Siegel, deceased, and Vornado, Inc., dated April 30, 1965 (the "Employment Agreement"), were subject to federal estate tax.

3. The moving parties are also the sole beneficiaries of that Employment Agreement.

4. On the basis of his determination that the Employment Agreement proceeds were subject to federal estate tax and his belief that collection of the tax was in jeopardy, the Commissioner made a jeopardy assessment against the Estate and served a Notice of Levy on Vornado, Inc. seizing any amount then due but unpaid to the moving parties.

5. As a consequence of this action, as well as Vornado, Inc.'s own delay in paying over, the moving parties have been and will be denied the funds on which they have depended for support and maintenance unless prompt action is taken.

6. The moving parties believe that the Executors and their lawyers may not seek an expeditious resolution of the Employment Agreement issue since there is or may be a conflict of interest. One of the Executors of the Estate, Frederick P. Zissu, is also Chairman of the Board of Directors of Vornado, Inc., as well as a partner in the firm of lawyers representing the Estate before this Court; and it would be advantageous for Vornado, Inc. to delay payments under the Employment Agreement. The other Executor of the Estate, Norman Lipshie, has been held to be "in an impossible state of conflict of interest" in a related action involving the same parties by Judge Martin Stecher. *In the Matter of the Application of Arlene Roberta Siegel, et al*, Index No. 23466/72, (Sup.Ct. IC Part XII, July 26, 1976).

7. In view of the foregoing, the tax liability of the Estate directly affects the moving parties, both as residuary beneficiaries of the Estate and as beneficiaries of the Employment Agreement since on the one hand, any increased tax will decrease the possibility of any distribution to them and on the other, the proceeds of the Employment Agreement have been seized for payment of the Estate's alleged tax deficiency.

8. The purpose of this joinder or intervention is solely for expeditiously obtaining the determination of this Court on the estate tax consequences of the Employment Agreement. The Employment Agreement is a transaction already before this Court, and the litigation of question involves precisely the same questions of fact and law already before this Court.

WHEREFORE, the moving parties respectfully pray this Court to permit them either to join as parties under Rule 61(a), or to intervene on behalf of Petitioner under Rule 63(d) in the above captioned case and to grant such other relief as this Court deems appropriate.

Respondent opposes the granting of the motion for permissive joinder or intervention.

On November 15, 1976, the applicants for intervention filed with this Court an affidavit of Michael S. Barron, the attorney who represents the estate in this case, which they contend constitutes a statement of no objection by the executors to intervention in the case by the parties seeking intervention. This affidavit reads in part as follows:

3. One of the issues in this proceeding is whether the value of the Employment Agreement referred to in Paragraph 2 hereof is includable in the gross estate for Federal estate tax purposes.

4. Although the children of Murray J. Siegel are the sole beneficiaries of the Estate and also the sole beneficiaries of the Employment Agreement, they are not the only parties with an interest in a determination of whether or not the Employment Agreement is includable in the gross estate for Federal estate tax purposes. In that connection, Article THIRTEENTH of the First Codicil to the Last Will and Testament of Murray J. Siegel provides as follows:

"All estate, inheritance, transfer, legacy, succession, and other death taxes of any nature, payable by reason of my death, which may be assessed or imposed upon or with respect to property passing under this, my Last Will and Testament, or property not passing under this, my Last Will and Testament, shall be paid out of my residuary estate and shall be borne equally by my residuary beneficiaries: my fiancee, JOAN HATFIELD and my children, ARLENE ROBERTA SIEGEL, or her issue, per stirpes, and ALFRED ROBERT SIEGEL, or his issue, per stirpes. The net value, after all estate, inheritance and other death taxes of any nature, of the bequests to be received by my residuary beneficiaries—my fiancee, JOAN HATFIELD, and my children, ARLENE ROBERTA SIEGEL, or her issue, per stirpes, and ALFRED ROBERT SIEGEL, or his issue, per stirpes,—shall be equal."

Although the bequest to Joan Hatfield Siegel was revoked by a Second Codicil, the rights of creditors are involved.

5. On March 29, 1976, the Internal Revenue Service served a Notice of Levy upon Vornado, Inc. in connection with sums to be paid pursuant to the Employment Agreement. The amount of said levy was $476,488.43. Said sum is the total deficiency asserted in the Statutory Notice referred to in Paragraphs 2 and 3 of the Petition filed by the undersigned in this matter dated March 1, 1976, plus interest thereon. Thus, with respect to liability for payment, it is not possible to separate the issue of the Employment Agreement from all of the other issues in this proceeding.

6. Vornado, Inc. is withholding the payments to be made pursuant to the Employment Agreement. Such payments are being withheld because of the Notice of Levy referred to in Paragraph 5 hereof, because of litigation now pending in the Federal District Court for the District of New Jersey, and to protect its rights. This litigation was initially commenced by Joan Hatfield Siegel against Vornado. Vornado commenced a third party interpleader action against all of the Moving Parties, as defendants, to avoid double liability.

7. The undersigned takes vigorous issue with the implication contained in Paragraph 6 of the Motion to Intervene that we are not seeking an expeditious resolution of the Employment Agreement issue. Both before and after the date of the subject Motion, conversations have been held with Regional Counsel and the Appellate Conferee regarding a possible settlement of this matter. In that connection, a detailed clarification of our position on certain issues (Exhibit A hereto) was sent to Regional Counsel on October 26, 1976, a copy of which was sent to Clapp & Eisenberg.

* * *

9. The Executors of the Estate of Murray J. Siegel are the parties named in the Statutory Notice of Deficiency and are entitled to representation by counsel of their own selection. Neither Clapp & Eisenberg, nor any attorney associated therewith, has been authorized to appear in this action on behalf of said Executors.

10. The Executors of the Estate of Murray J. Siegel have authorized me to inform this Court that they have no objection if the Court wishes to permit the Moving Parties to become parties to the proceeding in their own right. However, the Executors of the Estate remain as parties, and object to the intervention of other parties or their attorneys on behalf of said Executors. Nothing contained herein should be construed as a change in party or authorized representative within the meaning of Rule 24(e)(i) or any other rule of this Court.

Attached to this affidavit is a letter addressed to respondent's counsel by Mr. Barron in which arguments are presented with respect to the adjustments made in the statutory notice of deficiency. The first item dealt with in the argument presented in this letter is the propriety of the inclusion in the gross estate of the employment agreement.

The record shows that no notice of deficiency or of liability as transferee has been issued to any of the persons seeking to intervene in this case. The record also shows that the parties seeking to intervene contend that they should have been sent notices of transferee liability. Further, the record shows that the moving parties desire to file with this Court a motion for partial summary judgment with respect to the issue of the inclusion of the employment contract in the estate. They contend that this issue is solely a question of law.

While the Court filed the motion here under consideration solely as a "motion to intervene," the moving parties continue to argue that they should be permitted permissive joinder under Rule 61 of the Rules of Practice of this Court or be substituted as parties under Rule 63 of those Rules.

Since no notice of deficiency has been issued to any of the moving parties, it is clear under the holding in *Anthony Guarino,* 67 T.C. 329 (1976), that they may not be joined as parties in this case.

It is likewise clear that they may not be substituted as parties under Rule 63. That rule deals with the situation where a case has been properly filed in this Court by a proper party petitioner and a change occurs such as the death of the petitioner, or where the petition is filed by a fiduciary and

that fiduciary has died or resigned and a successor fiduciary or representative has been appointed. Although the applicants for intervention stress subparagraph (d) of Rule 63 of our Rules of Practice and Procedure, which provides that "The Court, on motion of a party or on its own initiative, may order the substitution of proper parties for other cause," the provision of this subsection is likewise inapplicable here. The record here shows that the notice of deficiency was sent to one of the executors of the estate. Therefore, under Rule 60 of the Rules of Practice and Procedure of this Court, the executors are the proper parties to file a petition in this Court seeking a redetermination of the proposed deficiency in estate tax. See also *Estate of Theodore Geddings Tarver*, 26 T.C. 490, 498 (1956), affd. in part and revd. in part 255 F.2d 913 (4th Cir. 1958), specifically holding that the executor of an estate is the proper person to be sent a notice of deficiency in the estate tax of the estate and to file a petition with this Court. Since the proper party to contest respondent's determination of deficiency in estate tax is before the Court, the moving parties are not entitled to substitution under Rule 63.

The merit to this motion, if any, is the parties' request to intervene. Our Rules of Practice and Procedure contain no reference to "intervention." In *Cincinnati Transit, Inc.*, 55 T.C. 879, 883 (1971), we stated:

Petitioner argues that the issuance of the notice of deficiency to Transit Co. and the filing of a petition by Transit Co. gave this Court jurisdiction to redetermine the deficiencies in tax for the years involved and that thereafter Transit, Inc., by joining in the petition, may submit itself to the personal jurisdiction of the Court. Petitioner cites no direct authority for this proposition and we know of none. Although the Tax Court in appropriate situations has accepted amicus briefs, and has permitted "intervention" to "participate" or to consider who was the authorized and qualified liquidator, *Central Union Trust Co., et al., Executors*, 18 B.T.A. 300; see also *Louisiana Naval Stores, Inc.*, 18 B.T.A. 533, we know of no cases in which a third party to whom a notice of deficiency had not been issued was permitted to join the taxpayer to whom a notice of deficiency had been issued as party petitioner, and petitioner refers to none. Where, as here, the taxes involved are not those of Transit, Inc., Transit Co. is still in existence and has filed a petition herein, and respondent has not issued a notice of deficiency or a notice of transferee liability to Transit, Inc., this Court could not enter a binding decision against Transit, Inc., even though it has jurisdiction to redetermine the tax liability of Transit Co. for the years here involved. There is a sound distinction between permitting a third party to "intervene" or file an amicus brief to protect its interests, which we

think would be discretionary at best under these circumstances, and permitting a party to join as a party petitioner in a proceeding to redetermine someone else's tax liability.

The motion of the parties seeking to intervene in this case and the argument made on their behalf show that they wish to become parties and to take over the litigation of the issue in this case involving the employment contract. Since no notice of deficiency or liability has been sent to any of the moving parties, we lack jurisdiction to grant the motion of the moving parties to become parties to this action. *Cincinnati Transit, Inc., supra.*

However, since the moving parties have relied on certain cases of this Court permitting "intervention," we consider it appropriate to discuss the issue of whether this case would be an appropriate one in which to permit "intervention" to the limited extent that it has been allowed by this Court.

In *Central Union Trust Co. et al., Executors,* 18 B.T.A. 300 (1929), the Court permitted an individual, who had a collateral agreement to pay whatever estate tax resulted from the inclusion in the gross estate of a claim by the estate against him, to intervene in an estate tax case where it appeared that the executor and the person asking to intervene took opposite positions with respect to the estate tax claim and in the probate proceeding. In concluding that we had authority to permit the intervention, the Court stated (pp. 302–303):

It is clear that the issue to be determined is one which rises between the Commissioner and the executors of the estate and may be fully settled without the presence of the intervenor. Any interests which he may have are entirely subordinated to the rights between the present parties to this proceeding and may be protected properly by him in other proceedings in another forum. There can be no question that he is not a necessary party to this proceeding and that he may not intervene as a matter of right. It may be doubtful whether this Board would have power to join the intervenor as a party to the proceeding against his wishes.

But it is within the sound discretion of the body before which a controversy is pending to permit intervention where the intervenor has an interest in the controversy which is contrary to that of either of the parties and which otherwise might not be protected in such proceeding or where such intervention appears necessary to simplify and completely administer justice under the facts of the particular case. * * *

See also *Louisiana Naval Stores, Inc.,* 18 B.T.A. 533 (1929); *Commissioner v. Revere Land Co.,* 169 F.2d 469, 479 (3d Cir.

1948), revg. 7 T.C. 1061 (1946), and a Memorandum Opinion of this Court; *Levy Trust v. Commissioner*, 341 F.2d 93 (5th Cir. 1965), affg. an order of this Court denying a motion to intervene.

In *Gladys T. Pitts*, 26 B.T.A. 312 (1932), the Court refused intervention to a corporation claiming an interest in any funds held by petitioners which might be used to satisfy the tax liability determined by respondent because of those funds having been embezzled from the corporation seeking to intervene. In concluding that no proper grounds for intervention had been laid, we stated that the real interest of the corporation was to see that its property was not taken "to satisfy the petitioners' tax liability." We added that "this property is not the subject of the litigation before the Board and is not within our exclusive control." We pointed out that we had no jurisdiction over the property in which the person seeking to intervene was interested or any other property, but that we merely determined the deficiencies, if any. We then stated (p. 316) as follows:

Collection is another matter, with which we have nothing whatever to do. Our decision can not even remotely or indirectly affect the rights of F. H. Smith Company in specific property. It will give the Government no right to collect the deficiencies from the property of the F. H. Smith Company. * * *[1]

To what extent we permitted participation by the parties who we held would be allowed to "intervene" in *Central Union Trust Co. et al., Executors, supra,* and similar cases, does not show from our opinions. Certainly, as heretofore pointed out, we could not within our jurisdictional limits have permitted any person to whom a notice of deficiency was not sent to become a party.[2] Here, not only does respondent

---

[1] See also *Frederic W. Procter*, a Memorandum and Order of this Court dated May 5, 1943, in which we refused intervention to the donee of gifts in a case where a deficiency in gift tax had been determined against the donor, while recognizing that if the deficiency were upheld it might be that the tax would have to be paid by the donee seeking to intervene.

[2] "Permissive Intervention" under rule 24(b) of the Federal Rules of Civil Procedure is not granted by United States District Courts to a person seeking the intervention on behalf of the plaintiff unless that person can show that his claim is supported by an independent jurisdictional basis. *Pierson v. United States*, 71 F.R.D. 75 (D.Del. 1976). Cf. *Chalmers v. United States*, 43 F.R.D. 286 (D.Kan. 1967), permitting intervention under rule 24(b) on behalf of the Government without such a showing and discussion of that case in *Pierson v. United States, supra* at 83–84.

oppose intervention by the moving parties but the executors oppose such intervention unless these persons are permitted to become "parties" to the action. The issue on which the moving parties wish to intervene is by their own representation a question of law. Therefore, unless the moving parties were permitted to become parties and take over the handling of this issue, no purpose would be served in permitting them some form of limited intervention which would not be served by permitting them to file an amicus curiae brief as to the issue of law in which they are interested.

The moving parties have made no showing that their interests and the interests of the executors are not the same or that the executors are not adequately representing their interests. In fact, the affidavit of the attorney for the petitioner indicates that the executors' interests are the same as the interests of the moving parties and that the representation of the interests of the moving parties is adequate. Absent a showing that representation of their interests is inadequate, the moving parties have shown no basis for any type of intervention that it would be within our jurisdiction to grant.[3] The moving parties have also failed to show that disposition of their case as a whole, or even final resolution of the issue in which they are interested, would be expedited by the filing of a motion for partial summary judgment as to the employment contract issue.

In the posture of this record the moving parties have made no showing to persuade us that we should exercise any discretion we have to permit them to intervene when we lack jurisdiction to join them as a party.

It will be in the discretion of the Judge of the Court who hears this case on the merits whether to allow these moving

---

[3] In determining what constitutes an "adverse interest" of an applicant for intervention under rule 24(a) of the Federal Rules of Civil Procedure providing for "Intervention of Right," the court in *Peterson v. United States*, 41 F.R.D. 131, 134 (D.Minn. 1966), stated the well-established rule to be that interests are not adverse where the interests of the applicant and the plaintiff in the outcome of the suit are the same, even though they may be in conflict in other respects. In *Pierson v. United States*, 71 F.R.D. 75, 78 (D.Del. 1976), it is stated that generally to show inadequate representation an applicant for intervention must show either collusion between the representative and the opposing party, an adverse interest of the representative, or failure of the representative in fulfillment of his duty.

parties to file briefs amici curiae, if these parties request permission to file such briefs.

*An appropriate order will be issued.*