**UNITED STATES of America**

v.

**Steven TRENK, President, Gold Crown Insurance Ltd., Successor in Interest to Techtron Inc. & Subs., Successor in Interest To Techtron Holdings, Inc. & Subs, Appellant.**

**No. 09–2486.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 30, 2010.

Opinion Filed: July 01, 2010.

---

Charles M. Flesch, Esq., Randolph L. Hutter, Esq., Robert W. Metzler, Esq., United States Department of Justice, Washington, DC, for United States of America.

Frank Agostino, Esq., James J. Bonicos, Esq., Calo Agostino, Hackensack, NJ, for Appellant.

Before: SLOVITER, BARRY and HARDIMAN, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

At issue on this appeal is whether the District Court erred in granting the Internal Revenue Service's (the "IRS") petition to enforce a summons for the production of certain documents pursuant to the crime-fraud exception to the attorney-client privilege. We will remand the matter to the District Court with instructions to provide appellant Steven Trenk with an opportunity to argue against the application of the crime-fraud exception.

## BACKGROUND

On August 26, 2005, the IRS issued a summons to Trenk, president of Gold Crown Insurance, Ltd., the corporate successor to TechTron Holdings, Inc. ("Tech-Tron"), in furtherance of its examination to determine TechTron's federal income tax liability for the taxable year ending December 31, 2000. The IRS alleged that TechTron received $5.2 million in litigation settlement proceeds, which it transferred to a wholly-owned subsidiary in exchange for a demand note for $5.2 million from the subsidiary. TechTron then transferred the demand note to an attorney's trust account, and on its corporate income tax return "reported the $5.2 million and deducted $5.2 million, effectively eliminating" that amount from taxable income. (App. at 59.) The IRS claims that this was an "abusive tax avoidance scheme" that enabled TechTron to avoid paying taxes on

the settlement proceeds while still maintaining control over those funds. (*Id.* at 78.) The summons instructed Trenk to appear for a hearing to give testimony and to produce various documents and data.

On March 3, 2006, the government filed a petition to enforce the summons. In response, Trenk maintained that he was not in possession of any documents responsive to the summons "with the exception of the [four] documents which are being withheld as privileged." (*Id.* at 120.) He proposed that "the Court review the [four] documents [being withheld] *in camera* to determine whether they should be disclosed to the Government." (D.N.J. Docket, 06–cv–01004, Doc. No. 9 at 25.) On November 20, 2006, the District Court enforced the summons. With respect to the four documents withheld under Trenk's "blanket assertion" of privilege, App. at 132, it ordered that Trenk "set up an in camera review of the aforementioned four documents" so that he would be able to explain *ex parte* why the documents should not be produced, *id.* at 132, 147. The Court added that if he failed to arrange the review, "the opportunity to do so will be deemed waived, and ... the Court, on petitioner's application, will direct that the aforementioned documents be produced immediately." (*Id.* at 147.)

By letter dated December 7, 2006, Trenk's attorney submitted the four documents (Documents A–D [1]) for *in camera* inspection and referred the District Court to a previously submitted memorandum setting out Trenk's arguments why the documents should not be disclosed. On January 22, 2007, the Court granted Trenk's partial motion for reconsideration, thereby reversing its previous order enforcing the summons, but the effect of that ruling on the Court's earlier instructions to Trenk to arrange for *in camera* review of the four documents was unclear.

Trenk never arranged for *ex parte* review, and he maintains that the District Court never expected that he do so in light of its action on the motion for reconsideration. In March and April 2007, the Court scheduled an evidentiary hearing to address whether Trenk was in possession of relevant documents.[2] After the first day of the hearing, Trenk's attorney identified seven other "privileged documents which may arguably be within the scope of the summons," App. at 554, and asked, by letter dated April 20, that the Court review these documents (Docs.E–K) "*in camera* along with the original four documents," *id.* at 555. On February 26, 2009, 2009 WL 485375, the Court found that the crime-fraud exception applied to Documents A through K and ordered Trenk to produce them.

## DISCUSSION

Trenk timely appealed the District Court's order with respect to the production of Documents D through K. He argues that he was denied the opportunity to refute the application of the crime-fraud exception, and that, in any event, the exception should not be applied to Documents G, H, I and J, which were prepared after the relevant tax return was filed.

### A. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 26 U.S.C. § 7604, and our juris-

---

1. We use the same identification letters used before the District Court.

2. Although it was the District Court's intention to "address all relevant ... attorney-

client privilege issues" at the hearing, that topic was not explored in detail and the crime-fraud exception was not discussed. (App. at 27, 272, 502–05.)

diction on appeal is based on 28 U.S.C. § 1291. Our review of the legal issues associated with the application of the crime-fraud exception is plenary, and "[o]nce the court determines there is sufficient evidence of a crime or fraud to waive the attorney-client privilege, we review its judgment for abuse of discretion." *In re Impounded*, 241 F.3d 308, 312, 318 (3d Cir.2001).

## B. The Crime–Fraud Exception to the Attorney–Client Privilege

The attorney-client privilege protects confidences so as to "encourage full and frank communication between attorneys and their clients and thereby promote ... the observance of law and administration of justice." *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). Where the client abuses the privilege by using the attorney's counsel to facilitate a future or continuing crime or fraud, however, "the privilege can be overridden." *In re Grand Jury Investigation*, 445 F.3d 266, 274 (3d Cir.2006). The party seeking to apply the crime-fraud exception must "make a prima facie showing that (1) the client was committing or intending to commit a fraud or crime, and (2) the attorney-client communications were in furtherance of that alleged crime or fraud." *In re Grand Jury Subpoena*, 223 F.3d 213, 217 (3d Cir.2000) (internal citations omitted).

In *Zolin*, the Supreme Court held that district courts could "conduct an *in camera* review of allegedly privileged communications to determine whether those communications fall within the crime-fraud exception." 491 U.S. at 565, 109 S.Ct. 2619. It explained that before doing so, "the judge should require a showing of a factual basis adequate to support a good faith belief ... that *in camera* review of the materials may reveal evidence to establish ... that the crime-fraud exception applies." *Id.* at 572, 109 S.Ct. 2619 (internal quotations and citation omitted). This is not an issue where—as in Trenk's case—the party invoking the privilege freely submits the documents for *in camera* review.

We have subsequently explained, however, that whether to *apply* the crime-fraud exception is a separate, more demanding undertaking: "If the party seeking to apply the exception has made its initial showing, then a more formal procedure is required than that entitling plaintiff to *in camera* review." *Haines v. Liggett Group Inc.*, 975 F.2d 81, 96–97 (3d Cir.1992). In terms of process, this means that "where a fact finder undertakes to weigh evidence in a proceeding seeking an exception to the privilege, the party invoking the privilege has the absolute right to be heard by testimony and argument." *Id.* at 97.

## C. The Lack of Hearing

■ Trenk argues that the District Court erred by not providing him with an opportunity to address the crime-fraud exception, which the Court applied, without notice, in its February 26, 2009 order. We agree that although the documents were properly before the Court for *in camera* inspection, the Court should not have applied an exception that "break[s] the seal of a highly protected privilege" without first notifying Trenk and providing him with an opportunity for argument. *See id.* at 96.

At first blush, it is tempting to conclude that Trenk had his chance for argument but waived it. In its November 20, 2006 order, the District Court provided Trenk the opportunity to argue *ex parte* at an *in camera* hearing why the documents should be protected from disclosure. It explained

that if Trenk did not arrange for *in camera* review, the chance to do so would be waived and he would be ordered to produce the documents. Trenk submitted Documents A through D by letter for the Court to review, and nothing more. He later sent a second letter, explaining that he found additional responsive documents, Documents E through K, which he asked that the Court review "*in camera* along with the original four documents." (App. at 555.)

It is not sufficiently clear from the record before us, however, that Trenk had the opportunity to appear before the District Court *ex parte* to argue for his position. In granting Trenk's partial motion for reconsideration on January 22, 2007, the Court—reasonably so—appears to have abandoned its initial plan to use *in camera* review to decide whether the documents should be produced and, instead, elected to defer ruling on the issue until after an evidentiary hearing. But the subsequent hearing that took place was primarily for "the limited purpose of allowing the Court to ... make an express determination on whether Trenk was in possession or control of the requested documents." (*Id.* at 27.) The Court then, in its February 26, 2009 order, applied the crime-fraud exception without having heard from Trenk on the subject. In doing so, "the party invoking the [attorney-client] privilege," was denied his "absolute right to be heard by testimony and argument." *See Haines,* 975 F.2d at 97. Although it was assuredly unintended, this outcome is troubling when dealing, as we are, with an "ancient and valuable privilege." *United States v. Doe,* 429 F.3d 450, 453 (3d Cir.2005).

One further point is worth mentioning. It is abundantly clear that between the time when the District Court first instructed Trenk to arrange for *in camera* review in its November 20, 2006 order and when it partially vacated that order on January 22, 2007, Trenk expected that—even if it were granted—his motion for reconsideration would have *no* impact on the Court's November 20 instructions. His December 7, 2006 letter asking the Court to review Documents A through D states that "[t]he outcome of the [reconsideration] motion will have no effect on whether the allegedly privileged documents should be produced." (App. at 536.) Rather than arrange to be present for an *in camera* review, he quite literally "mailed it in." It is unclear, however, whether the Court was under the same impression about the impact of his motion, explaining at a hearing on March 27, 2007 that "the motion for reconsideration overshadowed" the privilege dispute and so it "didn't make the [*in camera*] review." (*Id.* at 272.) Thus, on this record, we cannot say that Trenk was given the opportunity required by *Haines* to argue against the application of the crime-fraud exception. Although the practice of making documents available for *in camera* inspection "is well established in the federal courts," *Zolin,* 491 U.S. at 569, 109 S.Ct. 2619, it does not deprive the party invoking the privilege of the opportunity to contest the application of the crime-fraud exception, *Haines,* 975 F.2d at 96–97; *see In re Grand Jury Subpoena,* 223 F.3d at 218.[3]

## D. The Documents Prepared After Filing

■ Trenk argues that the crime-fraud exception should not apply to those documents—G, H, I, and J—that were prepared after the relevant tax return was

---

**3.** The government claims that Trenk failed to show that the documents at issue are privileged. The District Court initially ruled on the crime-fraud exception without developing this issue, and so we are unable to consider it on appeal.

filed, because tax violations are completed when the contested tax return is filed. The District Court rejected this argument, finding instead that the alleged fraud was in seeking to avoid taxation of the settlement not just during the 2000 tax year, but also "in each subsequent year." (App. at 30.) In its view, "the fraud alleged ... is ongoing so long as [TechTron] avoids paying taxes on the income." (*Id.*) We agree; indeed, there is little value in filing a fraudulent tax return if the impropriety will be disclosed shortly thereafter. We also agree that the cases Trenk cites— *United States v. Habig*, 390 U.S. 222, 88 S.Ct. 926, 19 L.Ed.2d 1055 (1968) and *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965)—are distinguishable. In those cases, the asserted wrongdoing was filing the fraudulent tax returns; however, it is TechTron's allegedly *on-going* efforts to eliminate the litigation settlement from taxable income that are at issue here. To the extent that the Court, on remand, determines that the crime-fraud exception applies, Documents G, H, I, and J would not be protected based on the date of their preparation.

## CONCLUSION

For the reasons above, we will remand this matter to the District Court so that Trenk may have an opportunity to present arguments against the application of the crime-fraud exception to Documents D through K.