# United States Tax Court

T.C. Memo. 2023-29

TECHTRON HOLDING, INC.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 10304-17.                          Filed March 9, 2023.

————————

*Frank Agostino*, for petitioner.

*Leon St. Laurent*, for respondent.

## MEMORANDUM OPINION

VASQUEZ, *Judge*:  This case for redetermination of a deficiency and a section 6663 civil fraud penalty is before the Court on our Order to Show Cause (OTSC) dated June 16, 2020.[1] Therein the Court directed petitioner, Techtron Holding, Inc., to show cause why this case should not be dismissed for lack of jurisdiction on the ground that petitioner lacks capacity to litigate in this Court.  For the reasons explained below, we will make our OTSC absolute and dismiss this case for lack of jurisdiction.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]                                    *Background*

Some of the facts have been stipulated and are so found. We incorporate the First Stipulation of Facts and accompanying Exhibits (other than those not admitted at the evidentiary hearing mentioned below) by this reference. We state these findings of fact solely for the purpose of disposing of the OTSC and not as findings of fact on the merits of this case.

*Petitioner and subsidiaries*

Petitioner was organized under the laws of Delaware on November 30, 2000. Petitioner was a C corporation with a principal place of business in New Jersey. Alvin Trenk and his son Steven Trenk were petitioner's majority shareholders. Alvin Trenk was petitioner's chief executive officer (CEO) and chairman, and Steven Trenk was its president.

As of December 31, 2000, petitioner was the parent of an affiliated group of corporations which included Techtron, Inc. (Techtron). Like petitioner, Techtron was a C corporation organized under the laws of Delaware. Alvin Trenk was Techtron's CEO and chairman, and Steven Trenk was its president.

On September 25, 2001, petitioner's consolidated Form 1120, U.S. Corporation Income Tax Return (2000 consolidated return), was filed for its taxable year ended (TYE) December 31, 2000. The 2000 consolidated return named petitioner as parent corporation for the "Techtron Holding, Inc. and Subsidiaries (FKA Techtron, Inc.)" consolidated group (Holding consolidated group).[2] On the return the Holding consolidated group reported total income of $1,564,061 and claimed "[o]ther deductions" of $1,602,686.

*Subsequent mergers*

In 2001 the Holding consolidated group commenced a series of mergers. On January 5, 2001, petitioner merged downstream into Techtron with Techtron surviving the merger. On December 27, 2001, Techtron merged with and into Gold Crown Insurance, Ltd. (Gold Crown), a British Virgin Islands corporation. Pursuant to an agreement

---

[2] In addition to petitioner, the Holding consolidated group comprised Techtron, Diatronics, Inc., Thermatech, Inc., Physicians Healthcare of America, Inc., Pizza Piazza, Inc., and Pizza Piazza of NY, Inc.

[*3] and plan of reorganization (merger agreement) between those entities, Gold Crown survived the merger. Before this transaction, Alvin and Steven Trenk were the majority shareholders of Techtron. Thereafter they became majority shareholders of Gold Crown, which had the same owners and ownership percentages as Techtron. Alvin and Steven Trenk served as directors and officers of Gold Crown from 2001 to 2007.

In September 2002 a final consolidated return was filed for Techtron's TYE December 27, 2001. The final consolidated return named as the taxpayer "Techtron Inc. & Subsidiaries (FKA Techtron Holding Inc. & Subsidiaries)." An attachment to the final consolidated return reported that petitioner had merged into Techtron on January 5, 2001, with Techtron surviving the merger. The attachment also reported that the Holding consolidated group had continued to exist after the merger (with Techtron as the substituted common parent pursuant to the applicable consolidated return regulations). On another attachment Techtron reported that it had merged into Gold Crown on December 27, 2001.

*Examination*

In April 2004 respondent commenced an examination of petitioner's 2000 consolidated return. Respondent assigned Revenue Agent (RA) Candi J. Samansky to the examination. RA Samanksy's initial goal was to secure petitioner's consent to extend the period of limitations on assessment for 2000. She prepared Form 872–I, Consent to Extend the Time to Assess Tax As Well As Tax Attributable to Items of a Partnership, bearing petitioner's name and extending the period of limitations by approximately one year. In July 2004 she mailed the Form 872–I to the address on petitioner's 2000 consolidated return. On August 1, 2004, Steven Trenk signed the Form 872–I on behalf of petitioner.

RA Samansky became concerned about the effect of petitioner's merger into Techtron, and Techtron's merger into Gold Crown. After conferring with an attorney from the Office of Chief Counsel, she prepared another Form 872–I bearing the name "Gold Crown Insurance Ltd, as successor in interest to Techtron Inc, as successor in interest to Techtron Holdings [sic] Inc." On August 5, 2004, Steven Trenk signed the Form 872–I on behalf of Gold Crown.

**[\*4]** In November 2004 the law firm Calo Agostino advised RA Samansky that it was representing petitioner and Gold Crown in connection with the examination of petitioner's 2000 consolidated return. Calo Agostino provided RA Samansky with two Forms 2848, Power of Attorney and Declaration of Representative, designating Frank Agostino and other individuals as petitioner's and Gold Crown's authorized representatives.

On February 10, 2005, Calo Agostino faxed RA Samansky Form 2045, Transferee Agreement, which was signed on behalf of Gold Crown by Steven Trenk. The Form 2045 identifies Techtron as the "Transferor" and Gold Crown as the "Transferee." It provides in relevant part:

> In consideration of the Commissioner of Internal Revenue not issuing a notice of deficiency to and making an assessment against the above-named transferor [Techtron], the undersigned, as transferee of assets received from the above-named transferor, assumes and agrees to pay the amounts of any and all Federal income or profits taxes finally determined or adjudged as due and payable by such transferor for the tax years ended December 31, 2000\*, to the extent of the liability at law or in equity as transferee within the meaning of section 6901 of the Internal Revenue Code and corresponding provisions of internal revenue laws.

A typewritten notation underneath the above excerpt states that the taxable year is "\*with respect to tax liabilities of Techtron Holdings [sic] . . . for 12-31-2000."

In 2005 respondent issued a summons to Steven Trenk in connection with the examination of petitioner's 2000 consolidated return. From 2005 through 2011, that summons was the subject of an enforcement action in the U.S. District Court for the District of New Jersey and the U.S. Court of Appeals for the Third Circuit. *See United States v. Trenk*, 385 F. App'x 254 (3d Cir. 2010).

Between 2005 and 2009 Mr. Agostino signed five successive Forms 872–I. Mr. Agostino also signed seven successive Forms 872, Consent to Extend the Time to Assess Tax, between 2010 and 2016. Those consent forms signed by Mr. Agostino purportedly granted a limited extension of the period of limitations for petitioner's TYE

[*5] December 31, 2000.³ Each of those consent forms was captioned: "Gold Crown Insurance Ltd. (EIN . . . ), as successor to Techtron, Inc., as successor to Techtron Holdings [sic] Inc. (EIN . . . ), and as alternative agent for the members of the Techtron Holdings [sic] Inc. and Subs. Consolidated group."

*Statutory notice of deficiency*

In 2015 respondent's Examination Division proposed adjustments to petitioner's 2000 consolidated return. Petitioner protested the Examination Division's proposed adjustments to the Internal Revenue Service's Office of Appeals (Appeals).

On April 11, 2017, Appeals issued a statutory notice of deficiency (SNOD) determining a deficiency in federal income tax and a section 6663 civil fraud penalty for petitioner's TYE December 31, 2000.⁴ The SNOD package included (1) a three-page cover letter, (2) Form 5278, Statement–Income Tax Changes, and (3) Form 886–A, Explanation of Items. Therein respondent determined an upward adjustment of $5,200,000 to petitioner's other income. Respondent also disallowed other deductions of $25,000.

The names and address on the first page of the cover letter appear as follows:

---

³ The consent forms signed by Mr. Agostino restricted the amount of any assessment to that resulting from particular adjustments not here relevant. Petitioner contends that the adjustments underlying the determined deficiency fall outside the scope of the restriction. Additionally, petitioner disputes the validity of the consent forms on the ground that respondent failed to notify petitioner of its right to refuse to extend the period of limitations under section 6501(c)(4)(B). Petitioner also disputes the validity of the consent forms signed by Steven Trenk in August 2004. We express no opinion about the scope or validity of any of the consent forms.

⁴ Respondent also determined an alternative section 6662(a) accuracy-related penalty in the event the section 6663 penalty did not apply. The parties stipulated that petitioner is not liable for the section 6663 penalty.

[*6]

Date: 1 1 APR 2017

Refer Reply to:
  AP:EX:NWK:JEH
In Re:
  Income Tax Liability

TECHTRON HOLDING INC
GOLD CROWN INS LTD C/O MT &L
P.O. BOX 3161
NEWTON NJ 07860

Form Number:
  1040
SSN/EIN Number:
  ██████████

Last Day to File a Petition with the
United States Tax Court:

While the first page of the cover letter identifies petitioner and Gold Crown,[5] the Form 5278 and the Form 886–A name only petitioner as the taxpayer. The only employer identification number referenced in the SNOD is petitioner's.

*Tax Court proceedings*

On May 9, 2017, the Petition in this case was filed. The Petition was captioned in petitioner's name only and signed by Mr. Agostino as counsel for petitioner. Therein petitioner alleged that the "three and six year statutes of limitations" on assessment had expired under section 6501.

After this case was calendared for trial, the parties jointly moved to bifurcate from the rest of the case the issue of whether the Forms 872–I and 872 had extended the period of limitations under section 6501(c)(4). The parties requested that we hold an evidentiary hearing on the section 6501(c)(4) issue at the April 9, 2018, New York, New York, trial session and continue the remainder of the case. We granted the parties' Motion and held an evidentiary hearing on the section 6501(c)(4) issue at that trial session.

Thereafter the parties filed Simultaneous Opening and Answering Briefs. Although neither party asserted that we lack

---

[5] The post office box address on the notice matches that reported for petitioner and Gold Crown on an updated Form 2848 provided to respondent by Mr. Agostino in 2015.

[*7] jurisdiction, the parties' briefs raised questions about petitioner's corporate status and its capacity to litigate in this Court.[6]

By the OTSC dated June 16, 2020, we directed petitioner to show cause why this case should not be dismissed for lack of jurisdiction on the ground that petitioner lacks capacity to litigate in this Court. Petitioner and respondent each filed a responsive Memorandum of Law (MOL). Petitioner argued in its MOL that we should dismiss this case for lack of jurisdiction on the ground that the SNOD was invalid. In the alternative petitioner argued that we should allow Gold Crown to substitute for petitioner under Rule 63. In response, respondent asserted that Gold Crown has neither ratified nor expressed an intention to ratify the Petition.

By Order filed January 21, 2022, we directed petitioner to address respondent's argument regarding ratification. On February 22, 2022, petitioner filed an MOL acknowledging "that Gold Crown has not ratified the Petition." Respondent filed a responsive MOL on March 4, 2022.

*Discussion*

I.  *Jurisdiction and corporate capacity*

We are a legislatively created (Article I) court; consequently, our jurisdiction flows directly from Congress. *See Freytag v. Commissioner*, 501 U.S. 868, 870 (1991); *Kelley v. Commissioner*, 45 F.3d 348, 351 (9th Cir. 1995), *aff'g* T.C. Memo. 1990-158; *Neilson v. Commissioner*, 94 T.C. 1, 9 (1990); *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985); *see also* § 7442. The Court is a court of limited jurisdiction and lacks general equitable powers. *Commissioner v. McCoy*, 484 U.S. 3, 7 (1987); *Commissioner v. Gooch Milling & Elevator Co.*, 320 U.S. 418, 420 (1943). Whether we have jurisdiction to decide a matter is an issue that a party, or this or an appellate court sua sponte, may raise at any time. *David Dung Le, M.D., Inc. v. Commissioner*, 114 T.C. 268, 269 (2000), *aff'd*, 22 F. App'x 837 (9th Cir. 2001).

To have jurisdiction here we must find that (1) respondent issued petitioner a valid notice of deficiency and (2) petitioner, or someone authorized to act on its behalf, filed a timely petition with the Court. *See* Rule 13(a), (c); *Hallmark Rsch. Collective v. Commissioner*,

---

[6] Respondent questioned petitioner's capacity to litigate and suggested that the Petition was filed on behalf of Gold Crown under an incorrect caption.

**[\*8]** No. 21284-21, 159 T.C., slip op. at 14 (Nov. 29, 2022); *Monge v. Commissioner*, 93 T.C. 22, 27 (1989); *Timbron Int'l Corp. v. Commissioner*, T.C. Memo. 2019-31, at \*4; *see also* §§ 6212 and 6213.

With respect to corporate taxpayers like petitioner, a proper filing requires taxpayers tendering petitions to the Court to have the capacity to engage in litigation before this Court. *See* Rule 60(c); *see also Brannon's of Shawnee, Inc. v. Commissioner*, 71 T.C. 108, 111 (1978); *Condo v. Commissioner*, 69 T.C. 149, 151 (1977). Rule 60(c) provides that "[t]he capacity of a corporation to engage in such litigation shall be determined by the law under which it was organized."

As stipulated by the parties, petitioner was organized under the laws of Delaware. Therefore, Delaware law controls.[7] *See* Rule 60(c).

Under Delaware law, the surviving corporation in a merger succeeds to and is liable for the debts and liabilities of the acquired corporation to the same extent as if incurred by the successor corporation. Del. Code Ann. tit. 8, § 259(a) (2022); *see S. Pac. Transp. Co. v. Commissioner*, 84 T.C. 367, 373 (1985). The statute also provides that, after a merger, the separate existence of all corporations other than the surviving corporation "shall cease." Del. Code Ann. tit. 8, § 259(a). Accordingly, nonsurviving corporations under Delaware law cannot sue or be sued. *See Beals v. Wash. Int'l. Inc.*, 386 A.2d 1156, 1161–62 (Del. Ch. 1978) (quashing service of process on nonsurviving corporate defendant because it had ceased to exist on merger "for all purposes, including service of process, unless the legislature provides otherwise"); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.*, No. 87C-SE-11, 1991 Del. Super. LEXIS 269, at \*7–8 (Del. Super. Ct. July 15, 1991) (dismissing claims against nonsurviving corporation because it lacked the capacity to sue or be sued); *see also Beam v. Monsanto Co.,* 414 F. Supp. 570, 579 (W.D. Ark. 1976) ("By virtue of the merger, the merged corporation loses its capacity to sue the corporation into which it has been merged . . . ." (quoting *Basch v. Talley Indus., Inc.*, 53 F.R.D. 9, 11–12 (S.D.N.Y. 1971))); *Sevits v. McKiernan-Terry Corp.*, 264 F. Supp. 810, 811 (S.D.N.Y. 1966) (holding that under Delaware law, the surviving corporation after a merger is the only corporation with capacity to be sued).

---

[7] Petitioner originally asserted that it had capacity to litigate this case under New Jersey law. However, petitioner has since acknowledged that Delaware law is controlling with respect to its capacity under Rule 60(c).

**[\*9]** The record establishes that petitioner merged into Techtron on January 5, 2001, with Techtron surviving the merger. That same year Techtron merged with and into Gold Crown with Gold Crown surviving the merger. Petitioner acknowledges that it did not exist during any part of respondent's examination of its 2000 consolidated return. Thus, having ceased to exist after January 5, 2001, petitioner lacked the requisite capacity under Rule 60(c) to petition this Court for redetermination of the deficiency.[8]

In its MOL in response to our OTSC, petitioner agrees that we should dismiss this case for lack of jurisdiction. However, it argues that we should do so "not because of lack of capacity to litigate, but because [r]espondent issued an invalid notice of deficiency." Petitioner alternatively argues that we should permit the substitution of Gold Crown under Rule 63 if we do not invalidate the SNOD. We will address each argument in turn.

II. *Petitioner's arguments*

A. *Validity of SNOD*

We first address petitioner's argument that the SNOD is invalid because it was mailed to the wrong taxpayer.[9] Petitioner asserts that it is the only taxpayer named in the SNOD despite the reference to Gold Crown on page one and the entities' shared mailing address. Respondent disagrees and asserts that the SNOD "was captioned and addressed to both Holding [petitioner] and Gold Crown at the address furnished to [him] for those entities." According to respondent, the

---

[8] Under Delaware law, "[a]ny action or proceeding, whether civil, criminal or administrative, pending by or against any corporation which is a party to a merger or consolidation shall be prosecuted as if such merger or consolidation had not taken place." Del. Code Ann. tit. 8, § 261 (2022). We have held that an ongoing examination, by itself, does not constitute an "administrative" proceeding under that section. *See Malone & Hyde, Inc. v. Commissioner*, T.C. Memo. 1992-661, 1992 Tax Ct. Memo LEXIS 703, at \*27–29. That section does not apply here, given that respondent's examination did not even begin until three years after petitioner's merger into Techtron.

[9] It might be argued that we need not consider petitioner's argument given its lack of capacity. *See Lee Enters., Inc. v. Commissioner*¸ T.C. Memo. 1992-629, 1992 Tax Ct. Memo LEXIS 655, at \*5 ("We conclude that we must decide the issue of capacity before considering the validity of the notice of deficiency."). However, we will do so here in the interest of completeness.

**[\*10]** SNOD includes a determination that Gold Crown is primarily liable for the deficiency and penalty determined against petitioner.[10]

We need not decide whether the SNOD includes a determination as to Gold Crown, a nonparty in this case. *See Levitt v. Commissioner*, 97 T.C. 437, 443 (1991) ("Inasmuch as we have concluded that [the taxpayer] is not a party to this case, any additional or unnecessary findings would have no binding effect in this or any subsequent proceeding."). We address only petitioner's argument that the SNOD was issued to the wrong taxpayer. We assume for purposes of our discussion that petitioner is the only taxpayer named in the SNOD.[11]

Generally under section 6213(a), a taxpayer may file a petition for redetermination of a deficiency within 90 days after the mailing of a notice of deficiency authorized in section 6212. In the absence of notice to the Secretary under section 6903 of a fiduciary relationship, the Commissioner may issue a notice of deficiency to a corporate taxpayer at its last known address even if the corporate taxpayer has terminated its existence. *See* § 6212(b)(1). It is well settled that notices of deficiency issued to dissolved corporations are valid under such circumstances.[12]

---

[10] Primary liability is a personal liability that may be satisfied from any or all of the obligor's assets. *S. Pac. Transp. Co.*, 84 T.C. at 374. It is distinct from transferee liability, which is not a personal liability and only subjects the property or fund received by the transferee from the transferor to the transferor's debts. *Id.* We have held that "in certain cases . . . it is possible for a person to be primarily liable for a transferor's debts and also to be liable as a transferee." *Id.*

Respondent asserts that Gold Crown is primarily liable for the deficiency in petitioner's 2000 income tax by operation of Delaware law and Gold Crown's assumption of Techtron's liabilities in the merger agreement. On the record before us it does not appear that respondent has sought to impose transferee liability on Gold Crown.

[11] This Court has held that a notice of deficiency is valid if it objectively places a reasonable taxpayer on notice that the Commissioner has determined a deficiency in tax for a particular year and amount. *Dees v. Commissioner*, 148 T.C. 1, 6 (2017). Neither party disputes that the SNOD reflects respondent's determination that petitioner has a deficiency in income tax of $1,639,405 for its TYE December 31, 2000.

[12] Treasury regulations in effect for the year in issue address situations where, as here, the common parent of an affiliated group ceases to exist. *See* Treas. Reg. § 1.1502-77A(d) and (e) (generally effective for taxable years beginning before June 28, 2002). Treasury Regulation § 1.1502-77A(d) sets forth rules regarding the effect of a common parent's dissolution or termination. Treasury Regulation § 1.1502-77A(e) sets forth rules regarding the entities to which the Commissioner may send notices of deficiency "if the corporation that is the common parent of the group ceases to be the common parent." Neither party has cited these regulations in response to our OTSC. We therefore assume they have no bearing on the jurisdictional issue before us.

**[\*11]** *See, e.g.*, *Padre Island Thunderbird, Inc. v. Commissioner*, 72 T.C. 391, 394–95 (1979); *Brannon's of Shawnee, Inc. v. Commissioner*, 69 T.C. 999, 1003 (1978); *Great Falls Bonding Agency, Inc. v. Commissioner*, 63 T.C. 304, 306 (1974).

As explained above, petitioner was no longer in existence when respondent issued the SNOD. Petitioner does not dispute that respondent mailed the SNOD to its last known address. Accordingly, section 6212(b) authorized the issuance of the SNOD to petitioner in the absence of notice of a fiduciary relationship under section 6903.

Section 6903(a) provides in relevant part: "Upon notice to the Secretary that any person is acting for another person in a fiduciary capacity, such fiduciary shall assume the powers, rights, duties, and privileges of such other person in respect of a tax imposed by this title." Section 6903(b) provides that such notice "shall be given in accordance with regulations prescribed by the Secretary." Pursuant to section 6903(b), Treasury Regulation § 301.6903-1(b)(2) provides rules for notices filed on or after April 24, 2002. Under the regulation, such notices "shall be signed by the fiduciary" and "must state the name and address of the person for whom the fiduciary is acting, and the nature of the liability of such person; that is, whether it is a liability for tax, and if so, the type of tax." Treas. Reg. § 301.6903-1(b)(2).

Petitioner asserts that Gold Crown's provision of a Form 2045 to respondent constitutes notice of a fiduciary relationship under section 6903. According to petitioner, respondent should have addressed the SNOD to Gold Crown. Respondent's failure to do so, petitioner argues, rendered the SNOD invalid.[13]

Petitioner's argument is without merit. Although Gold Crown's Form 2045 references the "tax liabilities of [petitioner] for 12-31-2000," it does not state that Gold Crown is acting for petitioner in a fiduciary capacity. Instead it identifies Gold Crown as the "Transferee" of certain assets from Techtron, petitioner's initial corporate successor. The terms "transferee" and "fiduciary" are distinct terms under the Code and applicable regulations. *Compare* § 6901(h) (defining "transferee" to

---

[13] Petitioner also faults respondent for incorrectly identifying Form 1040, U.S. Individual Income Tax Return, as the relevant tax form on the first page of the SNOD. However, "[m]istakes in a notice [of deficiency] will not invalidate it if there is no prejudice to the taxpayer." *John C. Hom & Assocs. v. Commissioner*, 140 T.C. 210, 213 (2013) (citing *Elings v. Commissioner*, 324 F.3d 1110 (9th Cir. 2003)). Petitioner has neither argued nor established that it was prejudiced by the incorrect form number.

[*12] include a "donee, heir, legatee, devisee, and distributee"), *and* Treas. Reg. § 301.6901-1(b) (expanding the definition of "transferee" to include a "distributee of an estate of a deceased person, the shareholder of a dissolved corporation, the assignee or donee of an insolvent person, the successor of a corporation, a party to a reorganization as defined in section 368, and all other classes of distributees"), *with* § 7701(a)(6) (defining "fiduciary" to mean "a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person"). Thus, Gold Crown's identifying itself as a "transferee" did not serve as notice to respondent that it was "acting for another person in a fiduciary capacity." *See* § 6903(a); *see also* §§ 6901(h), 7701(a)(6); Treas. Reg. § 301.6901-1(b).

Turning to the substance of the Form 2045, Gold Crown agreed— in exchange for respondent's not issuing a deficiency notice to and making an assessment against Techtron—to (1) concede that it was a transferee of Techtron's assets and (2) assume Techtron's tax liability for the year in issue to the extent of its liability under section 6901. *See Turnbull, Inc. v. Commissioner*, 42 T.C. 582, 588 (1964), *aff'd*, 373 F.2d 91 (5th Cir. 1967). We fail to see how those terms could have put respondent on notice that Gold Crown was acting for petitioner in a fiduciary capacity. In fact, by agreeing to assume Techtron's liability in exchange for respondent's not pursuing Techtron directly, Gold Crown expressed an intention to act for itself. Accordingly, Gold Crown's provision of a Form 2045 to respondent did not constitute notice of a fiduciary relationship under section 6903. We are unaware of any other documents in the record that could serve as such notice and therefore hold that respondent properly issued the SNOD to petitioner.

B. *Substitution under Rule 63*

Petitioner argues that we should allow the substitution of Gold Crown pursuant to Rule 63(c) and (d) if we do not invalidate the SNOD. Pursuant to Rule 63(c), where a fiduciary or representative is changed, the Court may order substitution of the proper successors. Pursuant to Rule 63(d), the Court may order substitution of "proper parties" for "other cause."

We interpret Rule 63 within the limitations placed upon the Court's jurisdiction. *See Estate of Siegel v. Commissioner*, 67 T.C. 1033, 1038–39 (1977); *KRR Constr. v. Commissioner*, T.C. Memo. 2010-94, 2010 Tax Ct. Memo LEXIS 126, at *5. Accordingly, Rule 63 is applicable to situations "where a case has been properly filed in this Court by a

**[\*13]** proper party petitioner and a change occurs such as the death of the petitioner." *Estate of Siegel*, 67 T.C. at 1038. It is also applicable to situations "where the petition is filed by a fiduciary and that fiduciary has died or resigned and a successor fiduciary or representative has been appointed." *Id.* at 1038–39.

Neither of those situations is present. The Petition was signed and filed on behalf of petitioner by Mr. Agostino. As explained above, petitioner lacked the requisite capacity to petition this Court. Thus, because the Petition was not filed on behalf of a proper party or fiduciary, we cannot substitute Gold Crown under Rule 63. *See id.*

To be sure, "[a] case timely brought shall not be dismissed on the ground that it is not properly brought on behalf of a party until a reasonable time has been allowed after objection for ratification by such party of the bringing of the case." Rule 60(a); *see Holt v. Commissioner*, 67 T.C. 829, 832–33 (1977) (allowing taxpayer wife to ratify imperfect petition signed by her husband); *Fletcher Plastics, Inc. v. Commissioner*, 64 T.C. 35, 40–41 (1975) (allowing corporate taxpayer to ratify imperfect petition signed by its attorney); *see also Carstenson v. Commissioner*, 57 T.C. 542, 546 (1972) (allowing taxpayers to ratify imperfect petition signed by their agent). The Note to Rule 60(a) states: "Where the intention is to file a petition on behalf of a party, the scope of this provision permits correction of errors as to the proper party or his identity made in a petition otherwise timely and correct." 60 T.C. 1057, 1094 (1973). With these principles in mind, we consider whether we can construe the request for substitution as a ratification of the Petition by Gold Crown.[14]

Before we issued our OTSC, respondent had suggested on brief that the Petition was filed on behalf of Gold Crown under an incorrect caption. However, in his MOL in response to our OTSC, respondent declared that suggestion "no longer tenable" given petitioner's contention that it alone received the SNOD. Respondent further stated:

---

[14] In its MOL in response to our OTSC, petitioner acknowledges that "Gold Crown is the successor in interest to [p]etitioner and is responsible for the potential tax liabilities at issue in this case" under Delaware law. A petition filed by a surviving corporation for redetermination of a deficiency determined against a merged corporation is within our jurisdiction where the surviving corporation is primarily liable for the debts of the merged corporation under applicable state law. *See Alaska Salmon Co. v. Commissioner*, 39 B.T.A. 455, 457–58 (1939); *see also Popular Libr., Inc. v. Commissioner*, 39 T.C. 1092, 1093 (1963). Neither party disputes that Gold Crown could have petitioned this Court in lieu of petitioner.

14

**[\*14]** "Gold Crown has not indicated its intention to ratify the [P]etition before this court, has not established that it authorized anyone to file a timely petition on its behalf, and has not argued that ratification applies in this case."

By Order filed January 21, 2022, we directed petitioner to address respondent's argument that Gold Crown has neither ratified nor expressed an intention to ratify the Petition. On February 22, 2022, petitioner filed an MOL acknowledging "that Gold Crown has not ratified the Petition." Petitioner contends that until the validity of the SNOD is established, "Gold Crown cannot be expected to subscribe to its validity by filing an amended petition or ratifying the Petition." Petitioner further argues that if this case is not dismissed for lack of a valid notice of deficiency, "then Gold Crown should be able to amend and ratify the [P]etition, which it is willing to do so that it can continue to prosecute Petitioner's defenses to the notice of deficiency." Petitioner asserts that the Court granted similar relief to a corporate taxpayer in *Fletcher Plastics*, 64 T.C. at 38.

In *Fletcher Plastics*, the Court considered whether a corporate taxpayer could ratify and amend a petition signed by its counsel but incorrectly captioned in its predecessor's name. *Id.* at 36. In response to the Commissioner's motion to dismiss for lack of jurisdiction, the taxpayer filed an amended petition with the correct caption, along with motions to amend the caption and petition. *Id.* The Court held that the taxpayer could properly amend the petition and remain in the case under Rule 60(a), which "permits the correction of errors as to the proper party to be made where there was an intent to file a petition on behalf of a party." *Fletcher Plastics*, 64 T.C. at 39. Because the taxpayer "clearly intended to file a petition to contest the deficiencies determined in a notice of deficiency sent to it and this petition was signed by its duly authorized counsel," it could correct the defective petition. *Id.* at 38–39. In further support of its holding, the Court noted that the taxpayer had "timely ratified" its counsel's signing of the petition. *Id.* at 40.

As petitioner acknowledges, Gold Crown has not sought to ratify the Petition in response to our OTSC. Such inaction distinguishes this case from *Fletcher Plastics*, in which the taxpayer promptly sought to amend its petition after the Commissioner had moved to dismiss for lack of jurisdiction. In the absence of ratification, we cannot conclude, as we did in *Fletcher Plastics*, that Gold Crown "clearly intended to file a petition to contest the deficiencies determined in a notice of deficiency sent to it." *See id.* at 38; *see also Abeles v. Commissioner*, 90 T.C. 103,

**[*15]** 108 (1988) ("In the absence of timely ratification, the case will be dismissed."). Accordingly, *Fletcher Plastics* does not authorize petitioner's request (presumably on behalf of Gold Crown) for a delayed ratification.

III. *Conclusion*

Petitioner lacked the requisite capacity to litigate when its Petition was filed. No other taxpayer with the capacity to litigate has ratified the Petition. Accordingly, we are left with no choice but to make our OTSC absolute and dismiss this case for lack of jurisdiction on the ground that petitioner lacks the capacity to litigate in this Court.[15] In reaching our conclusion, we have considered all arguments made, and to the extent not mentioned above, we conclude them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An order of dismissal for lack of jurisdiction will be entered.*

---

[15] Dismissal of this case for lack of jurisdiction does not constitute a decision that petitioner is liable for the determined deficiency. *See Dillman Bros. Asphalt Co. v. Commissioner*, 64 T.C. 793, 796–97 (1975); *Great Falls Bonding Agency, Inc.*, 63 T.C. at 307; *see also* § 7459(d).